THE STATE OF OHIO, APPELLEE, *v.* BLATNIK, APPELLANT.

(No. OT-84-5—Decided July 20, 1984.)

*Lowell S. Petersen,* prosecuting attorney, and *Barbara Petersen,* for appellee.

*Michael W. Sandwisch,* for appellant.

Douglas, J. This matter is before the court on appeal from judgment of the Port Clinton Municipal Court. Appellant, Spencer D. Blatnik, pled guilty to charges that he had violated R.C. 4511.19(A)(1) and 4507.02. The trial court accepted appellant's guilty pleas to both charges and entered a finding of guilty against appellant on said charges. When imposing sentence upon appellant, the trial court sentenced him to one year imprisonment for his violation of R.C. 4511.19(A)(1) and to six months imprisonment for his violation of R.C. 4507.02. The trial court further ordered that appellant's sentences were to be served consecutively, thus constituting an aggregate term of imprisonment of eighteen months. Additionally, the trial court ordered that appellant serve the eighteen-month aggregate imprisonment term in the Ohio State Penitentiary.

Subsequent to sentencing, appellant filed a motion to withdraw his guilty pleas based on the contention that appellant had received erroneous advice from counsel regarding his sentence. The trial court denied appellant's motion to withdraw his guilty plea.

Appellant now appeals from his judgment and sentence and from the trial court's denial of his motion to withdraw his guilty plea. For our review, appellant asserts the following two assignments of error:

"1. The Trial Court erred in sentencing the Defendant to the Ohio State Penitentiary for the offenses of OMVI (O.R.C. Section 4511.19(A)(1)) and No Operator's License (O.R.C. Section 4507.02).

"2. The Trial Court abused its discretion and erred in not allowing the Defendant to withdraw his guilty pleas after sentencing where Defendant had not been advised prior to sentencing that the Court would or could impose imprisonment in the Ohio State Penitentiary, and where no hearing on the motion to withdraw the pleas was had."

Initially, we address appellant's second assignment of error, wherein appellant claims that the trial court erred in refusing to permit him to withdraw his guilty pleas. A court may set aside a judgment of conviction and permit a defendant to withdraw a guilty plea after imposition of sentence only to correct a manifest injustice. Crim. R. 32.1; *State* v. *Smith* (1977), 49 Ohio St. 2d 261, 264 [3 O.O.3d 402]; *State* v. *Peterseim* (1980), 68 Ohio App. 2d 211, 213 [22 O.O.3d 341]. The burden of establishing the existence of a manifest injustice is upon the individual seeking vacation of the plea. *Smith, supra,* paragraph one of the syllabus. A post-sentence motion to vacate a guilty plea is addressed to the sound discretion of the trial court, *id.* at paragraph two of the syllabus, and an appellate court's review of a trial court's denial of a post-sentence motion to withdraw a guilty plea is limited to a determination of whether the trial court abused its discretion.[1] *Peterseim, supra,* at 214.

"What constitutes an abuse of discretion with respect to denying a motion

---

[1] The Supreme Court has stated that:

" 'The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. * * *' " *Blakemore* v. *Blakemore* (1983), 5 Ohio St. 3d 217, 219; *Steiner* v. *Custer* (1940), 137 Ohio St. 448 [19 O.O. 148].

This definition of the term "abuse of discretion" is applicable to a court's determination of a motion to withdraw a plea. *State* v. *Amison* (1965), 2 Ohio App. 2d 390, 393 [31 O.O.2d 594].

to withdraw a guilty plea necessarily is variable with the facts and circumstances involved." *State* v. *Walton* (1981), 2 Ohio App. 3d 117, 119. We recognize, however, that if a plea of guilty could be retracted with ease after sentence had been imposed, " 'the accused might be encouraged to plead guilty to test the weight of potential punishment, and withdraw the plea if the sentence were unexpectedly severe. * * *' " (Citations omitted.) *Peterseim, supra,* at 213. See *Smith, supra,* at 264.

Appellant filed an attendant affidavit together with his motion requesting post-sentence withdrawal of his guilty plea in the trial court. In his affidavit, appellant attests that he was informed by his former counsel at the time of entering his guilty pleas that he would be required to undergo an alcoholic rehabilitation program and to serve a short term of imprisonment. Appellant further states that at no time was he informed, either by his former or his latter counsel, that his imprisonment would or could be served in the state penitentiary. Additionally, appellant states that his latter counsel informed him at his sentencing hearing that the maximum sentence which he would receive was eighteen months servable in the county detention facility. Appellant attests that if he had known that his imprisonment would be served in the penitentiary, he would not have entered a guilty plea, or would have withdrawn his guilty plea prior to sentencing. Appellee-state has not refuted or put in issue any of appellant's attestations contained in his affidavit.

A post-sentence withdrawal motion is permitted only in extraordinary cases, *Smith, supra,* at 264, and only when necessary to correct a "manifest injustice." See Annotation, Withdrawal of Plea of Guilty or Nolo Contendere, After Sentence, Under Rule 32(d) of Federal Rules of Criminal Procedure (1971), 9 A.L.R. Fed. 309, 323, Section 5, for an

elaboration upon the meaning and application of this standard. Although difficult to precisely define, suffice it to say that an overwhelming authority of case law states that manifest injustice, as contemplated by the rule, does not, *ipso facto* result from counsel's erroneous advice concerning the sentence that will be imposed. *United States* v. *Scharf* (C.A.8, 1978), 568 F. 2d 106, 107-108; *Masciola* v. *United States* (C.A.3, 1972), 469 F. 2d 1057, 1059; *United States* v. *Becklean* (C.A.8, 1979), 598 F. 2d 1122, 1125, certiorari denied (1979), 444 U.S. 864; *Smith* v. *United States* (C.A.D.C. 1963), 324 F. 2d 436, 440, certiorari denied (1964), 376 U.S. 957; *Georges* v. *United States* (C.A.5, 1959), 262 F. 2d 426, 430; *United States* v. *Parrino* (C.A.2, 1954), 212 F. 2d 919, 921, certiorari denied (1954), 348 U.S. 840.

There is also authority which suggests that under certain circumstances, erroneous advice of counsel regarding the sentence which is to be imposed may result in manifest injustice. In *Becklean, supra,* the Eighth Circuit stated that if a guilty plea is entered *solely* because of erroneous advice, of if the erroneous advice plays a substantial part of inducement for the guilty plea, manifest injustice may result. *Becklean, supra,* at 1125. Also, it has been held that if a guilty plea is entered pursuant to counsel's representation, as opposed to counsel's likely prediction, that such a plea would result in a lesser sentence than the sentence actually received, it is necessary to permit post-sentence withdrawal of the guilty plea in order to prevent manifest injustice. *United States* v. *Hawthorne* (C.A. 3, 1974), 502 F.2d 1183, certiorari denied (1976), 429 U.S. 894. In this regard, the Cuyahoga County Court of Appeals, in *State* v. *Longo* (1982), 4 Ohio App. 3d 136, 140, stated that when:

" 'a guilty plea was entered as a result of a "grave misunderstanding" solely on the part of defense counsel and

not participated in by either the prosecution or the judge, the interests of justice required that the defendants be relieved of their pleas and the judgments of conviction vacated.' " Quoting from *United States, ex rel. Elksnis,* v. *Gilligan* (S.D.N.Y. 1966), 256 F. Supp 244, 249.

The record herein, other than appellant's affidavit, discloses only that appellant pled guilty and was then sentenced. Appellant does not assert that a plea arrangement had been made with the prosecutor concerning the length of his sentence as in *Hawthorne, supra,* nor does appellant assert that his counsel mistakenly represented to him the sentence which the state promised as in *Becklean, supra.* See *Walton, supra,* at 119. What appellant does assert is that his counsel speculated, although incorrectly, as to what appellant's sentence would be. According to the overwhelming weight of authority, this bare assertion does not, in and of itself, constitute manifest injustice. It has long been held that this type of speculation by counsel does not result in manifest injustice so as to permit a defendant who has pled guilty to withdraw his guilty plea after sentence has been imposed.

Appellant also asserts under this assignment of error that the trial court erred in denying his Crim. R. 32.1 motion to withdraw his guilty pleas without first conducting a hearing. However, we note the case of *United States* v. *Fournier* (C.A. 1, 1979), 594 F. 2d 276, wherein that court discussed the circumstances under which a hearing was necessary concerning a post-sentence motion to withdraw a guilty plea. The resolution reached by the *Fournier* court, and with which we agree, is that a hearing is not required if the facts alleged by the defendant, and accepted as true by the court, would not require that the guilty plea be withdrawn. As we discussed *supra,* the facts alleged by appellant and accepted as true do not result in manifest injustice.

Since a showing of manifest injustice is absolutely necessary in order for a court to grant a post-sentence Crim. R. 32.1 motion, absent such a showing, the motion must be denied. In view of our determination that the facts which appellant stated in his affidavit and accepted as true do not result in manifest injustice, the relief which appellant seeks is not appropriate. Accordingly, pursuant to the holding of *Fournier, supra,* the trial court was not required to hold a hearing on appellant's Crim. R. 32.1 motion. Appellant's second assignment of error is found not well-taken.

Regarding appellant's first assignment of error, we find the same well-taken for the reasons set forth below.

Appellant was found guilty of violating R.C. 4511.19(A)(1), driving while under the influence of alcohol. "Whoever violates section 4511.19 of the Revised Code is guilty of a misdemeanor of the first degree * * *." R.C. 4511.99(A). The description of the offense to which appellant pled guilty states that it was appellant's seventh offense of violating R.C. 4511.19 or a municipal ordinance relating to operating a motor vehicle while under the influence of alcohol within five years. Accordingly, pursuant to R.C. 4511.99(A)(3), appellant "shall be sentenced to a term of imprisonment of not less than thirty consecutive days nor more than one year." The trial court, under the authority of R.C. 4511.99(A)(3), sentenced appellant to a one-year term of imprisonment.

Appellant was also found guilty of violating R.C. 4507.02, operating a motor vehicle without an operator's license, a misdemeanor. See R.C. 2901.02(F). Pursuant to R.C. 4507.99(B), appellant was sentenced to a six-month term of imprisonment. The trial court, pursuant to R.C. 2929.41(B)(1), specified that the terms of imprisonment shall be served consecutively, thus resulting in an aggregate term of im-

prisonment consisting of eighteen months. The trial court, ostensibly under the authority of R.C. 2929.41(E)(4), further ordered that the aggregate term of imprisonment be served in the state penitentiary.

Specifically, R.C. 2929.41 relevantly provides:

"(E) Consecutive terms of imprisonment imposed shall not exceed:

"* * *

"(4) An aggregate term of eighteen months, when the consecutive terms imposed are for misdemeanors. When consecutive terms aggregating more than one year are imposed for misdemeanors under the Revised Code, and at least one such consecutive term is for a misdemeanor of the first degree that is an offense of violence, the trial court may order the aggregate term imposed to be served in a state penal or reformatory institution."

Thus, in order for the aggregate term of imprisonment to be served in the state penitentiary under R.C. 2929.41 (E)(4), several requisite conditions must first be satisfied: (1) there must be consecutive terms of imprisonment, (2) imposed for misdemeanor offenses, (3) where the aggregate term of imprisonment is more than one year, (4) and at least one such consecutive term is for a misdemeanor of the first degree, (5) that is an offense of violence.

The record reveals that in the instant appeal there exists consecutive terms of imprisonment imposed for misdemeanor offenses where the aggregate term of imprisonment is more than one year and where one such consecutive term is for a misdemeanor of the first degree. The threshold question, however, is whether a violation of R.C. 4511.19, a misdemeanor of the first degree, is an offense of violence.

The term "offense of violence" is defined in R.C. 2901.01 as follows:

"(I) 'Offense of violence' means any of the following:

"(1) A violation of sections 2903.01, 2903.02, 2903.03, 2903.04, 2903.11, 2903.12, 2903.13, 2903.21, 2903.22, 2905.01, 2905.02, 2905.11, 2907.02, 2907.03, 2907.12, 2909.02, 2909.03, 2909.04, 2909.05, 2911.01, 2911.02, 2911.11, 2911.12, 2917.01, 2917.02, 2917.03, 2917.31, 2919.25, 2921.03, 2921.34, 2921.35, 2923.12, and 2923.13 of the Revised Code;

"(2) A violation of an existing or former municipal ordinance or law of this or any other state or the United States, substantially equivalent to any section listed in division (I)(1) of this section;

"(3) An offense, other than a traffic offense, under an existing or former municipal ordinance or law of this or any other state or the United States, committed purposely or knowingly, and involving physical harm to persons or a risk of serious physical harm to persons;

"(4) A conspiracy or attempt to commit, or complicity in committing any offense under division (I)(1), (2), or (3) of this section."

Beginning with R.C. 2901.01(I)(4), there is no suggestion that appellant attempted to commit, was part of a conspiracy to commit, or was an accomplice in committing any offense under division (I)(1), (2), or (3) of R.C. 2901.01. Thus, division (I)(4) of R.C. 2901.01 is inapplicable to the case at bar.

Concerning division (I)(1) of R.C. 2901.01, the legislature has chosen not to include a violation of R.C. 4511.19 among the list of offenses, which are, *per se,* offenses of violence. Applying the statutory construction principle of *expressio unius est exclusio alterius,*[2] R.C.

---

[2] This rule of construction "means the mention of one thing implies the exclusion of another," *Green, Inc.* v. *Smith* (1974), 40 Ohio App. 2d 30, 32 [69 O.O.2d 17]. See *State, ex rel. Jackman,* v. *Court of Common Pleas* (1967), 9 Ohio St. 2d 159, 164.

2901.01(I)(1) does not, therefore, apply to a violation of R.C. 4511.19.

Considering next R.C. 2901.01(I)(2), the question is whether R.C. 4511.19(A)(1) is "substantially equivalent" to any of the offenses contained in the litany of offenses listed by the legislature in R.C. 2901.01(I)(1). These offenses are: R.C. 2903.01 (aggravated murder), R.C. 2903.02 (murder), R.C. 2903.03 (voluntary manslaughter), R.C. 2903.04 (involuntary manslaughter), R.C. 2903.11 (felonious assault), R.C. 2903.12 (aggravated assault), R.C. 2903.13 (assault), R.C. 2903.21 (aggravated menacing), R.C. 2903.22 (menacing), R.C. 2905.01 (kidnapping), R.C. 2905.02 (abduction), R.C. 2905.11 (extortion), R.C. 2907.02 (rape), R.C. 2907.03 (sexual battery), R.C. 2907.12 (felonious sexual penetration), R.C. 2909.02 (aggravated arson), R.C. 2909.03 (arson), R.C. 2909.04 (disrupting public services), R.C. 2909.05 (vandalism), R.C. 2911.01 (aggravated robbery), R.C. 2911.02 (robbery), R.C. 2911.11 (aggravated burglary), R.C. 2911.12 (burglary), R.C. 2917.01 (inciting to violence), R.C. 2917.02 (aggravated riot), R.C. 2917.03 (riot), R.C. 2917.31 (inducing panic), R.C. 2919.25 (domestic violence), R.C. 2921.03 (intimidation), R.C. 2921.34 (escape), R.C. 2921.35 (aiding escape or resistance to authority), R.C. 2923.12 (carrying concealed weapons), and R.C. 2923.13 (having weapons while under disability).

Upon our review of the elements of each of the offenses listed above and which the legislature has determined to be offenses of violence, with the elements of R.C. 4511.19(A)(1), it is readily apparent to this court that the offense with which appellant was found guilty (R.C. 4511.19[A][1]) is not the "substantial equivalent" to any of the offenses specifically listed by the legislature in R.C. 2901.01(I)(1). In so determining, this court is not unmindful of the problems and dangers associated with driving while under the influence of alcohol, not only in Ohio, but throughout the nation as well.[3] However, the elements of R.C. 4511.19(A)(1), standing alone, are not "substantially equivalent" to the elements of those offenses specifically included by the legislature as offenses of violence in R.C. 2901.01(I)(1). Thus, R.C. 2901.01(I)(2) is inapplicable to the case at bar.

Moving next to R.C. 2901.01(I)(3), an offense of violence is an offense, other than a traffic offense, "committed purposely or knowingly, and involving physical harm to persons or a risk of serious physical harm to persons." This court agrees that driving while under the influence of alcohol creates a risk of serious physical harm to persons. The paramount question, under this division of R.C. 2901.01, however, is whether a violation of R.C. 4511.19(A)(1) is a "traffic offense," which the legislature has excluded from the definition of "offense of violence."

Immediately noticeable is the inescapable fact that the prohibition against driving while under the influence of alcohol is contained in R.C. Chapter 4511: traffic laws-operation of

---

[3] " 'The carnage caused by drunk drivers is well documented and needs no detailed recitation here.' *South Dakota* v. *Neville* (1983), 469 U.S. 553, 558. 'The increasing slaughter on our highways, most of which should be avoidable, now reaches the astounding figures only heard of on the battlefield.' *Breithaupt* v. *Abram* (1957), 352 U.S. 432, 439, cited in *Haas* v. *State* (1982), 7 Ohio App. 3d 139, 140. 'The frightful carnage * * * [drunk driving] spews upon our highways,' *Tate* v. *Short* (1971), 401 U.S. 395, 401 (Blackmun, J., concurring), is exceeded only by the death toll of all our wars. *Perez* v. *Campbell* (1971), 402 U.S. 637, 657, 672 (Blackmun, J., concurring)." *Oregon* v. *Lemons* (1984), 17 Ohio App. 3d 195, 197-198.

motor vehicles. Also, R.C. 4511.06 concerns uniform application and precedence of traffic law, and states in pertinent part: "Sections 4511.01 to 4511.78, 4511.99, * * * of the Revised Code shall be applicable and uniform throughout this state and in all political subdivisions and municipal corporations of this state." Thus, R.C. 4511.19, which clearly falls between R.C. 4511.01 to R.C. 4511.78, is considered, at least under the auspices of R.C. 4511.06, to be a traffic law. See, also, R.C. 4511.07. Further, the Supreme Court, in amending the Ohio Traffic Rules, effective January 1, 1975, defined the term "traffic case" in Traf. R. 2 as follows:

" 'Traffic case' means all proceedings involving violations of laws, ordinances and regulations governing the operation and use of vehicles, conduct of pedestrians in relation thereto, and governing weight, dimension, loads or equipment or vehicles drawn or moved on highways and bridges."

A violation of R.C. 4511.19(A)(1) does fall under the category of "all proceedings involving violations of laws, ordinances and regulations governing the operation and use of vehicles."

The legislature saw fit to place the prohibition against driving while under the influence of alcohol as set forth in R.C. 4511.19(A)(1) under R.C. Chapter 4511. Based on the above analysis, it is clear to us that a violation of R.C. 4511.19(A)(1) is a violation of a traffic law, and therefore, constitutes a "traffic offense," which, by operation of R.C. 2901.01(I)(3), is not an "offense of violence."

If the legislature so desired, however, it could deem R.C. 4511.19 to be an offense of violence by including it in the delineation of such offenses contained in R.C. 2901.01(I)(1). Similarly, the legislature could indicate that a violation of R.C. 4511.19(A)(1) is not merely a "traffic offense," either by explicitly so

stating or by removing the prohibition against operating a vehicle while under the influence of alcohol from R.C. Chapter 4511. Thus, it should be noted the legislature did so concerning the crimes of aggravated vehicular homicide (R.C. 2903.06) and vehicular homicide (R.C. 2903.07), which we previously located under R.C. Chapter 4511, as R.C. 4511.181 and 4511.18, respectively.

In light of our determination that appellant's violation of R.C. 4511.19(A)(1), was, as a matter of law, a traffic offense, it is not an offense of violence under R.C. 2901.01(I)(3). Having held that appellant's violation of R.C. 4511.19(A)(1) is not an offense of violence under R.C. 2901.01(I)(1), (2), (3) or (4), appellant's first assignment of error is found well-taken.

The judgment of the Port Clinton Municipal Court is affirmed in part and reversed in part. Pursuant to App. R. 12(B), this cause is remanded to said court with instructions to render final judgment not inconsistent with this opinion.

*Judgment affirmed in part and reversed in part, and cause remanded.*

CONNORS, P.J., and HANDWORK, J., concur.

CONNORS, P.J. I reluctantly concur. I have no hesitancy in concurring in the well-reasoned and written opinion of its author. I would hope that the legislature, in its wisdom, would include R.C. 4511.19 in R.C. 2901.01(I)(1) and designate it to be an offense of violence. This would give the trial courts broader discretion in sentencing based on the facts of each individual case. If R.C. 4511.19 were presently included and so defined, I am certain that this court would not have come to the conclusion it was required to herein.