OPINION
{¶ 1} Appellant, Nathan A. Graham ("Graham"), appeals the March 10, 2004 judgment of the Common Pleas Court of Allen County overruling Graham's motion to withdraw guilty plea.
 {¶ 2} Graham was indicted on January 14, 1999 on six counts: one count of trafficking in cocaine, a felony of the fourth degree in violation of R.C. 2925.03(A) and (C)(4)(c); one count of trafficking in cocaine, a felony of the third degree in violation of R.C. 2925.03(A) and (C)(4)(d); one count of trafficking in cocaine, a felony of the second degree in violation of R.C. 2925.03(A) and (C)(4)(d); one count of possession of marijuana, a felony of the third degree in violation of R.C. 2925.11(A) and (C)(3)(d); one count of possession of cocaine, a felony of the fifth degree in violation of R.C. 2925.11(A) and (C)(4)(a); and one count of unlawful possession of a dangerous ordnance, a felony of the fifth degree in violation of R.C. 2923.17. The possession charges also contained six year firearm specifications pursuant to R.C.2941.144(A).
 {¶ 3} Graham initially pled not guilty to the charges. However, on March 11, 1999, Graham entered a negotiated plea of guilty. Pursuant to the negotiated plea, Graham pled guilty to the third degree felony trafficking in cocaine, the third degree felony possession of marijuana with the firearm specification, and the fifth degree felony possession of cocaine with the firearm specification and a forfeiture specification relating to $1305.00 in currency. The parties stipulated that Graham would receive a cumulative sentence of ten years imprisonment. On April 29, 1999, Graham was sentenced to an aggregate sentence of ten years in prison, of which six years was a mandatory sentence for the firearm specification. Fines were also imposed upon Graham in the total amount of $11,000.
 {¶ 4} On March 9, 2004, Graham filed a motion to withdraw his guilty plea in the above case, pursuant to Crim.R. 32.1. The trial court overruled Graham's motion in its judgment entry dated March 10, 2004. It is from this judgment that Graham now appeals, asserting the following assignment of error.
The trial court erred and abused its discretion in refusing toallow the plea to be withdrawn in this case where appellantdemonstrated that manifest injustice exists as a result of theplea, which acts to deny appellant due process of law.
 {¶ 5} In his sole assignment of error, Graham argues that the trial court erred in overruling his motion to withdraw his guilty plea. For the following reasons, we hold that the trial court properly overruled the motion.
 {¶ 6} A motion to withdraw a plea of guilty is governed by Crim.R. 32.1, which states: "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Accordingly, a defendant who seeks to withdraw a guilty plea after sentence has been imposed must demonstrate a manifest injustice. State v. Smith (1977),49 Ohio St.2d 261, paragraph one of the syllabus, 361 N.E.2d 1324. Crim. R. 32.1 motions are not subject to explicit time limitations. See State v. Bush, 96 Ohio St.3d 235,2002-Ohio-3993, 773 N.E.2d 522.[1]
 {¶ 7} A manifest injustice has been defined as a "clear or openly unjust act." State ex rel. Schneider v. Kriener,83 Ohio St.3d 203, 208, 1998-Ohio-271, 699 N.E.2d 83. Manifest injustice has also been defined as "an extraordinary and fundamental flaw in the plea proceedings." State v. Lintner, 7th Dist. No. 732, 2001-Ohio-3360, citing Smith, 49 Ohio St.2d at 264. Under the manifest injustice standard, "a postsentence withdrawal motion is allowable only in extraordinary cases." Smith,49 Ohio St.2d at 264; see e.g., State v. DeSote, 3d Dist. Nos. 12-03-05, 12-03-09, 2003-Ohio-6311 (manifest injustice to refuse to allow defendant to withdraw his plea of no contest to charge of failure to notify sheriff of his change of address, where defendant's duty to register as sex offender was premised on court order which was later set aside as void).
 {¶ 8} A defendant who seeks to withdraw his guilty plea after sentence has been imposed has the burden of establishing the existence of manifest injustice. Smith, 49 Ohio St.2d at 264, citing United States v. Mainer (C.A. 3, 1967), 383 F.2d 444. "A motion made pursuant to Crim.R. 32.1 is addressed to the sound discretion of the trial court, and the good faith, credibility and weight of the movant's assertions in support of the motion are matters to be resolved by that court." Smith, 49 Ohio St.2d at paragraph two of the syllabus. Therefore, reviewing courts will not reverse a trial court's denial of a motion to withdraw a guilty plea absent an abuse of discretion. State v. Nathan
(1995), 99 Ohio App.3d 722, 725, 651 N.E.2d 1044. An abuse of discretion implies that the trial court's decision was unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 9} In State v. Nathan, this court held that generally a hearing is required for a postsentence motion to withdraw a plea "`if the facts alleged by the defendant and accepted as true would require the court to permit that plea to be withdrawn.'"Nathan, 99 Ohio App.3d at 725, quoting State v. Hamed (1989),63 Ohio App.3d 5, 7, 577 N.E.2d 1111. It has also been held that "a post-sentence motion to withdraw a plea of guilty or no contest is ordinarily subject to denial without a hearing when the record indicates that the movant is not entitled to relief and the movant has failed to submit evidentiary documents sufficient to demonstrate a manifest injustice." State v.Cosavage (June 28, 1995), 9th Dist. Nos. 17074 and 17075, unreported, 1995 WL 404974, at *2.
 {¶ 10} Graham first argues that manifest injustice resulted from the ineffective assistance of counsel he received. Graham asserts that his counsel advised him that counsel needed to focus more on a separate case of Graham's pending before the Common Pleas Court of Hancock County. Graham also asserts that his counsel failed to advise him that the six year firearm specification was not applicable to the facts of the case. Finally, Graham asserts that his counsel failed to file an affidavit of indigency on his behalf or to challenge the imposition of the fines.
 {¶ 11} A high burden is placed upon the defendant to show ineffectiveness on the part of trial counsel. In Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, the United States Supreme Court established the process for evaluating a claim of ineffective assistance of counsel. The court held that an appellant must first show that his counsel's performance was deficient. Id. at 687. An appellant demonstrates this by "showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Id. The general standard for counsel's performance is "reasonably effective assistance." Id. at 687. Therefore, Graham is required to show that the performance of his trial counsel fell below "an objective standard of reasonableness." Id. at 688. This court must make the inquiry into the reasonableness of counsel's performance considering all of the circumstances in the case and the totality of the evidence. Id. at 695. Second, the appellant must show that his counsel's deficient performance prejudiced him. Id. at 687. This is proven by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id.
 {¶ 12} The Ohio Supreme Court set forth the test as to whether an individual has been denied effective counsel in Statev. Hester (1976), 45 Ohio St.2d 71, 341 N.E.2d 304. In Hester,
the court held that the test was "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done." Id. at 79. The Ohio Supreme Court later revised this test in State v. Lytle (1976), 48 Ohio St.2d 391, 396-397,358 N.E.2d 623, vacated on other grounds in (1978), 438 U.S. 910,98 S.Ct. 3135, 57 L.Ed.2d 1154, stating:
When considering an allegation of ineffective assistance ofcounsel, a two-step process is usually employed. First, theremust be a determination as to whether there has been asubstantial violation of any of defense counsel's essentialduties to his client. Next, and analytically separate from thequestion of whether the defendant's Sixth Amendment rights wereviolated, there must be a determination as to whether the defensewas prejudiced by counsel's ineffectiveness.
The court also placed the burden of proof upon the appellant, "since in Ohio a properly licensed attorney is presumably competent." Id., citing Vaughn v. Maxwell (1965),2 Ohio St.2d 299, 209 N.E.2d 164; State v. Williams (1969),19 Ohio App.2d 234, 250 N.E.2d 907.
 {¶ 13} We agree with the findings of the trial court that the performance of Graham's trial counsel was not so deficient as to fall below the objective standard of reasonableness. Graham makes a broad assertion that counsel was ill-prepared due to counsel's representation of Graham at the same time for serious charges pending against Graham in another county. Graham fails to point to a specific part of the record that shows a lack of preparation on the part of his counsel. The subsequent action of Graham's counsel withdrawing from representation of Graham in the matters pending on different charges in another county has no bearing upon the determination of whether Graham's counsel was adequately prepared when representing Graham in the case currently before this court.
 {¶ 14} Further, Graham asserts that his counsel failed to advise him that the firearm specification with a mandatory six year sentence was inapplicable. The record does not support this proposition by Graham. Since Graham pled guilty to the charges and the specifications, the state was not required to present its evidence in court proving each of the elements of the charges. While a trial court should determine if there is a sufficient factual basis to justify the defendant's conviction of a crime before accepting his plea to the charge, State v. Thorpe
(1983), 9 Ohio App.3d 1, 457 N.E.2d 912, the court is not required to examine the state's evidence to determine whether it is sufficient to prove the defendant's guilt of the crime.McAuley v. Maxwell (1963), 174 Ohio St. 567, 568-569,190 N.E.2d 922. Graham is seeking a review of determinations that would be made by a trier of fact, a right which Graham waived when he pled guilty to the charges and indicated to the court that he understood he was giving up his right to have a jury trial in the case. March 11, 1999 Change of Plea Hearing, p. 9. We will not review the factual assertions made by Graham with regard to the charges in a review of the denial of his motion to withdraw his guilty plea.
 {¶ 15} Finally, Graham asserts that his counsel failed to file an affidavit of indigency on Graham's behalf or challenge the fines imposed upon Graham. The record shows that Graham was informed by the court that he was subject to mandatory and discretionary fines on the counts to which he was pleading guilty. Graham did not make the court aware of his concerns regarding the mandatory fines when the court inquired whether Graham had any questions at the change of plea hearing. Graham has failed to point in the record where counsel was ineffective. Without such a showing by Graham, we must presume that counsel provided "reasonably effective assistance."
 {¶ 16} Next, Graham argues that a manifest injustice resulted by Graham not personally entering his guilty plea. Graham asserts that the trial court relied solely on the case of State v.Nathan (1995), 99 Ohio App.3d 722, 651 N.E.2d 1044, which Graham asserts is factually distinguishable from the case sub judice. Graham is incorrect in his assertion for two reasons. First, although the appellant in Nathan failed to make the plea hearing transcript part of the record on appeal and the court was unable to review the colloquy between the appellant and the trial court, the Nathan court outlined the Crim.R. 11 law for determining whether a guilty plea is valid. The court held that "[n]otably, Crim.R. 11 does not require that the defendant himself must orally give his plea to the trial court, thereby not prohibiting the defendant's counsel from orally entering the plea, as long as the remainder of Crim.R. 11 is complied with." Id. at 725-726. The court further held that "a manifest injustice does not occur by counsel vocalizing his client's plea." Id. at 726. We hold that these propositions of law were appropriately applied to the case sub judice by the trial court. Second, in its judgment entry overruling Graham's motion to withdraw his guilty plea, the trial court cites to authority in addition to theNathan case. The trial court cites to the Second District Court of Appeals, which held:
Let the accused be actually present in the court of competentjurisdiction; let the circumstances show clearly that he knew andunderstood what was being done; let it be made clear that heacquiesced in a plea of guilty then entered for him by hisattorney and the plea should have exactly the same force andeffect as though he had spoken himself in the words of theattorney.
 State v. Keaton (Jan. 14, 2000), 2d Dist. No. 98 CA 99, unreported, 2000 WL 20850, *5, citing U.S. v. Denniston (C.A. 2, 1937), 89 F.2d 696, 698.
 {¶ 17} Our review of the transcript of the change of plea hearing yields the same determination that the trial court made. Graham was present at the plea hearing and indicated to the trial court that he understood the nature of the charges against him, the mandatory and possible terms of incarceration and fines for the charges, and the actual sentence that the court would impose. The trial court clearly advised Graham of his rights pursuant to Crim.R. 11 and advised Graham of those rights he was waiving as a result of pleading guilty. Further, Graham indicated he had been able to communicate with his attorneys about what was taking place at the plea hearing and that he wanted the court to accept his plea of guilty to the charges. The court advised Graham's counsel to review the plea negotiation sheet again with Graham before the court witnessed Graham sign the sheet. We find no abuse of discretion by the trial court in finding that Graham acquiesced in the guilty plea entered on his behalf by his counsel.
 {¶ 18} Finally, Graham argues that manifest injustice resulted by the trial court imposing excessive fines upon Graham despite his inability to pay such fines. Graham asserts that the trial court should have inquired whether Graham had the ability to pay the fines before imposing them.
 {¶ 19} Pursuant to R.C. 2929.18(B)(1), Graham was subject to mandatory fines for the offenses to which he pled guilty. Graham asserts that the trial court failed to consider his present or future ability to pay the fines when they were imposed. Graham relies on the fact that there was no evidence in the record that the trial court took into consideration his ability to pay before assessing fines. While "[i]t is clear that the court should consider the impact a fine has on the offender, * * * the court is required to consider such factors only if evidence is offered at the sentencing hearing." State v. Frazier (Oct. 9, 1997), 8th Dist. Nos. 71675-71678, unreported, 1997 WL 626034, *6, citing State v. Burkitt (1993), 89 Ohio App.3d 214, 229,624 N.E.2d 210. Therefore, when a defendant does not object to the amount of a fine nor requests an opportunity to demonstrate he does not have the resources to pay the fines at the sentencing hearing, he waives any objection to the fine on appeal.Frazier, 1997 WL 626034, citing Burkitt,89 Ohio App.3d at 229. Unless a defendant files an affidavit of indigency, "the mandatory fine provision of R.C. 2929.18(B)(1) emasculates the requirement in R.C. 2929.19(B)(6) that the court consider the offender's ability to pay the fine before imposing it." State v.Dixon, 2d Dist. No. 01CA17, 2001-Ohio-7075, 2001 WL 1657836, * 7.
 {¶ 20} The record in this case demonstrates that Graham failed to file an affidavit with the trial court prior to sentencing alleging that he was indigent and unable to pay the mandatory fine. Since Graham failed to comply with the statutory procedure set forth in R.C. 2929.18(B)(1) for avoiding mandatory fines, the trial court was unable to avoid imposing the mandatory fine in this case. Dixon, 2001-Ohio-7075, citing State v.Gipson, 80 Ohio St.3d 626, 1998-Ohio-659, 687 N.E.2d 750.
 {¶ 21} Graham asserts that his lack of filing an affidavit of indigency proves his claim of ineffective assistance of counsel. However, counsel's failure to file an affidavit on behalf of Graham does not necessarily show that counsel was ineffective. Indigency with regard to ability to pay fines is distinguished from indigency with regard to a defendant's ability to afford counsel. Frazier, 1997 WL 626034. Graham's financial situation may not have supported a finding of indigency with regard to his ability to pay fines over a period of time. Id. Graham did not indicate to the trial court that he was unable to pay the fines when the court explained the imposition of the fines. The record does not indicate what Graham's financial situation was or if Graham expressed any concerns to counsel regarding his ability to pay the fines. Therefore, we cannot say that counsel was ineffective for failing to file an affidavit of indigency on Graham's behalf.
 {¶ 22} Upon review of the record, we find that Graham did not allege facts that result in a manifest injustice. As we stated above, motions made pursuant to Crim.R. 32.1 are addressed to the sound discretion of the trial court. Smith, 49 Ohio St.2d at paragraph two of the syllabus. Graham's motion to withdraw his guilty plea, as well as his brief to this court, set forth conclusory, self-serving allegations for which there is little or no support in the record. State v. Lightning (June 20, 1995), 7th Dist. No. 94 CA 143, unreported, 1995 WL 370741. A defendant's "bare unsubstantiated assertions" are not sufficient to demonstrate a manifest injustice. State v. Grigsby (1992),80 Ohio App.3d 291, 300, 609 N.E.2d 183.
 {¶ 23} Furthermore, the undue delay between Graham pleading guilty to the charges and the filing of his motion to withdraw his guilty plea is a factor that adversely affects his credibility. Smith, 49 Ohio St.2d 261 at paragraph three of the syllabus. Almost four years passed between the time Graham pled guilty and his filing of a Crim.R. 32.1 motion.
 {¶ 24} After reviewing the record and taking into consideration all of the circumstances in this case, we find that the trial court did not abuse its discretion in denying Graham's motion to withdraw his guilty plea. Accordingly, Graham's assignment of error is overruled and the judgment of the Common Pleas Court of Allen County is affirmed.
Judgment affirmed.
Shaw, P.J., and Cupp, J., concur.
[1] This court has consistently held that the doctrine of res judicata applies to claims raised pursuant to Crim.R. 32.1. SeeState v. Reynolds, 3d Dist. No. 12-01-11, 2002-Ohio-2823 (Shaw, J., dissenting). In Reynolds, a majority of this court held that when a motion to withdraw a guilty plea is brought after the time for direct appeal or postconviction relief, it should first be considered whether the claims raised in the motion are barred by res judicata. Id. at ¶ 27. We would apply the manifest injustice standard only when the claim was not barred by res judicata. Id. However, since the trial court addressed Graham's motion to withdraw his guilty plea on the merits, we have chosen to review the trial court's decision using the manifest injustice standard that the trial court employed.