Appellant, Brian Chittock, appeals the decision of the Columbiana County Court of Common Pleas, denying his motion to withdraw his plea of guilty to a specification of physical harm.
On May 4, 1995 a criminal complaint was filed against appellant, charging him with the rape of Theresa Chittock, appellant's former wife. The complaint alleged that on April 28, 1995, appellant had purposely compelled Theresa Chittock, by force or threat of force, to engage in sexual conduct.
On May 18, 1995, the Columbiana County Grand Jury returned an indictment against appellant charging him with one count of rape, in violation of R.C. 2907.02 (A) (2), and one count of aggravated burglary, in violation of R.C. 2911.11 (A) (3).
On October 16, 1995, a plea agreement was entered into. In lieu of the count of rape, appellant pleaded guilty to a charge of sexual battery with a specification of physical harm, in violation of R.C. 2907.03 (A) (1). In addition, appellee, State of Ohio, agreed to dismiss the aggravated burglary charge. Following the plea, appellant was sentenced to a term of imprisonment of not less than four years nor more than ten years.
On December 18, 1995, appellant filed a motion for shock probation pursuant to R.C. 2947.061, which motion was denied by the trial court on February 6, 1996. On March 26, 1997, appellant again filed a motion for shock probation arguing that his prior motion had not made clear that appellant had pleaded guilty to sexual battery with a specification of physical harm, as opposed to the indicted offenses of rape and aggravated burglary. The trial court denied this motion on March 28, 1997.
Subsequently, on April 21, 1997, appellant filed a motion to withdraw his plea of guilty on the specification of physical harm pursuant to Crim.R. 32.1. Appellant claimed that his counsel had not informed him that he would have to enter a guilty plea to the specification of harm and that appellant was unclear about having to plead to any charge other than sexual battery. In addition, appellant claimed that the failure of his counsel to mention the harm specification, coupled with counsel's failure to provide appellant with a copy of the information on the charges pleaded to, constituted ineffective assistance of counsel. On May 6, 1997, the trial court denied appellant's motion to withdraw his plea of guilty. On June 5, 1997 appellant filed a timely notice of appeal.
We note that appellee has failed to file a brief in this matter. Therefore, pursuant to App. R. 18(C), this court is authorized to accept appellant's facts and issues as correct and reverse the trial court's judgment if appellant's brief reasonably appears to sustain such action.
Appellant sets forth two assignments of error, the first of which states:
 "THE TRIAL COURT ERRORED [sic.] IN DENYING THE MOTION TO WITHDRAW DEFENDANT'S GUILTY PLEA, THUS DENYING THE DEFENDANT THE RIGHT TO A REMEDY, DUE PROCESS, AND VIOLATION OF [sic.] THE DEFENDANT'S EQUAL PROTECTION AND DUE PROCESS RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION."
Appellant alleges that he was not informed of all the accusations against him nor was he informed that he would have to enter a separate plea to the physical harm specification in addition to the plea on the charge of sexual battery. Appellant further asserts that his counsel did not instruct him concerning the harm specification. Rather, appellant states that he was told by his counsel that if he did not enter a plea of guilty to the prosecutor's information, he would receive a sentence of twenty to fifty-years. Appellant concedes that this purported conversation occurred off the record and in an attempt to substantiate its occurrence appellant has attached a sworn affidavit signed by himself. Appellant's argument appears to be that his guilty plea was induced by threats from his counsel, and it was therefore not made voluntarily or knowingly.
The remainder of appellant's argument is largely indecipherable but concludes with appellant's claim that he did not understand the nature of the charges against him. In particular, appellant claims he repeatedly stated that he was not guilty of the physical harm specification and did not understand the nature of it.
Crim.R. 32.1 states:
 "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea."
A defendant who seeks to withdraw a plea of guilty after the imposition of sentence has the burden of establishing the existence of manifest injustice. State v. Smith (1977), 49 Ohio St.2d 261, paragraph one of the syllabus. A motion made pursuant to Crim.R. 32.1 is addressed to the sound discretion of the trial court, and the good faith, credibility and weight of the movant's assertions in support of the motion are matters to be resolved by that court. Id., paragraph two of the syllabus. An appellate court's review of a trial court's denial of a post-sentence motion to withdraw a guilty plea is limited to a determination of whether the trial court abused its discretion. State v. Blatnik (1984), 17 Ohio App.3d 201,202. The term "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.State v. Adams (1980), 62 Ohio St.2d 151, 157. Undue delay between the alleged cause of the manifest injustice and the filing of the motion to withdraw is a factor which weighs against granting the motion. See Smith, supra, paragraph three of the syllabus.
Crim.R. 11 (C) (2) states:
 "In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept such plea without first addressing the defendant personally and:
 "(a) Determining that he is making the plea voluntarily, with understanding of the nature of the charge and of the maximum penalty involved, and, if applicable, that he is not eligible for probation.
 "(b) Informing him of and determining that he understands the effect of his plea of guilty or no contest, and that the court upon acceptance of the plea may proceed with judgment and sentence.
 "(c) Informing him and determining that he understands that by his plea he is waiving his rights to jury trial, to confront witnesses against him, to have compulsory process for obtaining witnesses in his favor, and to require the state to prove his guilt beyond a reasonable doubt at a trial at which he cannot be compelled to testify against himself."
Strict compliance is required of the trial court with respect to the constitutional rights delineated in Crim.R. 11 (C) (2). See State v. Nero (1990), 56 Ohio St.3d 106, 107; State v.Colbert (1991), 71 Ohio App.3d 734, 737. However, with respect to the remaining requirements of Crim.R. 11 (C) (2), substantial compliance is sufficient to establish a valid plea.State v. Mulhollen (1997), 119 Ohio App.3d 560, 563. Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving. Nero,supra, at 108. In determining whether the requirements of Crim.R. 11 (C) (2) were satisfied in a given case, an appellate court must focus primarily on the colloquy between the trial court and the defendant. Mulhollen, supra, at 564.
In the instant case, the transcript of proceedings indicates that the trial court satisfied the requirements of Crim.R.11 (C). The dialogue between the trial court and appellant was as follows:
 "THE COURT: Mr. Chittock, did you hear the plea agreement as Mr. McNicol, the Assistant Prosecutor, explained to me here this morning?
"MR. CHITTOCK: Yes, sir.
 "THE COURT: And I have a copy here signed Brian A. Chittock, is that your signature?
 "THE COURT: Do you underst — is there anything about this agreement that you don't understand, or would like to ask me about?
"MR. CHITTOCK: No, sir.
"* * *
 "THE COURT: Other than the plea agreement were there any threats made to you, or any promises made to you to get you to enter a plea of guilty here today?
"MR. CHITTOCK: No, sir.
 "THE COURT: Has Mr. Amendolara gone over with you the Judicial Advice to Defendant and the Defendant's Response to Court?
"MR. CHITTOCK: Yes, sir.
 "THE COURT: Has he also gone over with you the Prosecutor's Information?
"MR. CHITTOCK: Yes, sir.
 "THE COURT: Has he explained to you the possible maximum penalties involved in the original two charges in this matter; the aggravated felonies of the first degree?
"MR. CHITTOCK: Yes, sir.
 "THE COURT: Has he also gone over with you the elements of the crime as charged in the Prosecutor's Information?
"MR. CHITTOCK: Yes, sir.
"* * *
 "THE COURT: The Prosecutor's Information charges you with Sexual Battery, a felony of the third degree, with a Specification of physical harm. That carries a possible maximum sentence of ten — of four years to ten years in prison, and a five thousand dollar fine; do you understand that?
"MR. CHITTOCK: Yes, sir.
 "THE COURT: The elements of the charge are that you, in Columbiana County, Ohio, engaged in sexual conduct with someone who is not your spouse, when you coerced her to submit by means that would prevent a person of ordinary resistance — ordinary resolution into resisting. Do you understand those elements?
"MR. CHITTOCK: Yes, sir.
 "THE COURT: Also, the Specification of harm is that during the commission of this crime you caused physical harm to the victim. Do you understand that?
"MR. CHITTOCK: Yes, sir.
 "THE COURT: Physical harm doesn't have to be hospitalization, it can be any kind physical, uh, any kind of assault on a person. Even though it doesn't cause any actual hospitalization, do you understand that?
"MR. CHITTOCK: Do I understand that?
"MR. AMENDOLARA: He's asking you the questions.
"MR. CHITTOCK: Yes.
 "THE COURT: Well, if you don't understand it ask me now, sir.
 "MR. CHITTOCK: I just, uh, I understand what it says —
"THE COURT: — okay.
"MR. CHITTOCK: — I just don't totally . ..
 "THE COURT: Okay. You understand what the element of physical harm —
"MR. CHITTOCK: — yeah.
"THE COURT: Means.
"MR. CHITTOCK: Um huh (indicating yes.)
 "THE COURT: Mr. Chittock, the original Indictment charges you with Rape, an aggravated felony of the first degree. If I can find it here. . . And also charges you with Aggravated Burglary, an aggravated felony of the first degree. Do you understand that those charges carry possible maximum penalties of ten to twenty-five years in prison each. Do you understand that?
"MR. CHITTOCK: Yes, sir.
 "THE COURT: And if you went — if you were convicted of those two charges you could possibly receive twenty to fifty years in prison; do you understand that?
"MR. CHITTOCK: Yes, sir.
"* * *" (Tr. 6-11)
The trial court then went on to explain to appellant that by entering a plea of guilty he would be giving up his right to a jury trial, his right to confront witnesses, and his right to compulsory process. Additionally, the trial court explained to appellant that if he were to have a jury trial he could not be compelled to testify and that by pleading guilty appellant was giving up his right to have the prosecutor prove him guilty beyond a reasonable doubt. The dialogue continued as follows:
 "THE COURT: If you plead guilty today you will be admitting you did this charge, and this specification; do you understand that?
"MR. CHITTOCK: Yes.
 "THE COURT: Mr. Chittock, is there anything about what we have talked about here today that you do not understand, that you would like me to go back over with you, or you would like to ask me about?
"MR. CHITTOCK: No, sir." (Tr. 13-14)
The trial court then found that appellant possessed a knowledgeable and intelligent understanding of the rights he was giving up and that he was making his plea voluntarily. Appellant then signed a waiver of indictment. The dialogue continued as follows:
 "THE COURT: * * * The Information reads: That you, on or about the 28th day of April, 1995, and in Columbiana County, Ohio, engaged in sexual conduct with Theresa Chittock, who is not your spouse, when you knowingly coerced her to submit by any means that would prevent resistance by a person of ordinary resolution, a violation of Section 2907.03 (A) (1), of the Revised Code, a felony of the third degree.
 "How do you plead to that charge, sir?
"MR. CHITTOCK: This is hard. . .
"THE COURT: I understand.
"MR. CHITTOCK: Guilty.
 "THE COURT: The Specification provides further, and finds and further specifies, that during the commission of this offense you caused physical harm to Theresa Chittock. How do you plead to that Specification, sir?
"MR. CHITTOCK: Not guilty.
"MR. AMENDOLARA: Brian —
 "MR. CHITTOCK: — I don't understand —
 "(Off the record discussion of defense counsel and the defendant.)
 "THE COURT: Let me read him the definition of physical harm. Let me find it first. . .
 "(Of the record discussion of defense counsel and the defendant.)
 "THE COURT: The definition — my understanding from our conversation Mr. Chittock, I, I get the impression you don't understand what physical harm means; is that correct? As we define it here —
"MR. CHITTOCK: — as you define here, yes.
 "THE COURT: Yes. The Revised Code defines physical harm to persons to be the following: Any injury, or physiological impairment, regardless of its gravity or duration. Now to me that is again, a lot of legal terms, but essentially what that means is any kind of physical, uh, injury, whether that is simply pushing someone, or hitting someone, even if it doesn't leave a bruise, or doesn't leave some kind of permanent injury, or require hospitalization. Do you understand that?
"MR. CHITTOCK: Yes, I understand what you said.
 "THE COURT: For instance, in a simple assault charge, if you were to turn and push Mr. Amendolara, and push him down, even though he wasn't physical — wasn't hurt in the sense that you and I might think of him being hurt, that is physical harm, and that would be an assault charge. Do you understand that?
"MR. CHITTOCK: Yes.
"THE COURT: Does that help?
 "MR. CHITTOCK: Yeah, I understand what that means.
 "THE COURT: Okay. And I guess I should also — it doesn't necessarily mean that you — well, strike that.
 "Let me read the Specification again to you. If you have any questions, please ask me.
 "The Specification further finds and specifies, that during the commission of the offense of Sexual Battery, as I have just read it to you, you caused physical harm to Theresa Chittock. How do you plead to that specification?
"MR. CHITTOCK: Guilty, Your Honor.
"* * *" (Tr. 16-19)
It is clear from the dialogue between the judge and the appellant that appellant was fully aware of the ramifications of his guilty plea and the judge took great caution in making sure appellant understood what he was doing. The trial court asked appellant at least three times if he understood what the physical harm specification meant. When appellant stated that he did not understand, the trial court stopped and explained to appellant exactly what it meant. Only after the trial court cleared up any misunderstanding on the part of appellant did appellant enter his plea of guilty. An examination of the totality of the circumstances indicates that appellant subjectively understood the implications of his plea and the rights he was waiving.
Appellant's claim that he did not understand that he would have to enter a plea of guilty to the harm specification or that he did not understand the nature of it are not borne out by the record. Nor does the record indicate that appellant's plea was the result of threats from his counsel. The affidavit included in appellant's brief was not presented to the trial court and so we will not consider it as a part of the record on appeal. A reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter. State v. Ishmail (1978), 54 Ohio St.2d 402, paragraph one of the syllabus.
The record demonstrates that appellant's plea of guilty to the physical harm specification was made knowingly, intelligently, and voluntarily. Accordingly, the trial court did not abuse its discretion in denying appellant's motion to withdraw his plea.
Appellant's first assignment of error is without merit.
Appellant's second assignment of error states:
 "DEFENDANT'S COUNSEL FAILED TO GIVE HIM SUFFICIENT LEGAL COUNSEL BY WAY OF MISREPRESENTATION. COUNSEL DID NOT INFORM THE DEFENDANT THAT HE WOULD HAVE TO IN FACT ENTER A SEPARATE PLEA OF GUILTY TO THE SPECIFICATION WHICH IN FACT WOULD ADD AN INDEFINITE SENTENCE OF TEN (10) YEARS TO HIS SENTENCE."
Appellant reasserts his claim that counsel failed to inform him that he would have to plead guilty to the physical harm specification and also claims that counsel failed to investigate any evidence that could help appellant take his case to trial. Appellant further alleges that counsel did not speak to the victim even after she said she would talk with counsel, and that counsel failed to investigate a prior ongoing sexual relationship between appellant and the victim. Finally, appellant claims that his counsel did not review the prosecutor's information with him and led appellant to believe that if he pleaded guilty, he would only serve a sentence of two years and nine months rather than the twenty to fifty years he might receive if he insisted on going to trial.
In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that prejudice arose from counsel's performance. State v. Sallie
(1998), 81 Ohio St.3d 673, 674. A defendant must show that counsel acted unreasonably and that but for counsel's errors, there exists a reasonable probability the result would have been different. See Id.
"Judicial scrutiny of counsel's performance is to be highly deferential, and reviewing courts must refrain from second-guessing the strategic decisions of trial counsel."State v. Carter (1995), 72 Ohio St.3d 545, 558. Rather, trial counsel is entitled to a strong presumption that all decisions fell within the wide range of reasonable, professional assistance. See Sallie, supra, at 675.
In the instant case, the record fails to establish that appellant's counsel performed below an objective standard of reasonableness, nor does it demonstrate that appellant was prejudiced as a result of his counsel's actions. The trial court specifically asked appellant whether his counsel had gone over the Judicial Advice to Defendant and Defendant's Response to Court forms with appellant, whether counsel had gone over the prosecutor's information with appellant, whether counsel had explained the possible maximum penalties involved in the indictment counts to appellant, and whether counsel had gone over the elements of the crime as charged in the prosecutor's information. In response to all of these questions appellant answered "Yes, sir." As we have already noted, appellant's affidavit attached to his brief, wherein appellant appears to claim that counsel coerced his guilty plea by threatening that appellant would have to serve a sentence of twenty to fifty years, was not presented to the trial court and will not be considered as part of the record on appeal.
Because appellant failed to demonstrate that he was denied the effective assistance of counsel the trial court did not err in denying appellant's motion to withdraw his guilty plea to the physical harm specification. Accordingly, appellant's second assignment of error is without merit.
The judgment of the trial court is hereby affirmed.
Vukovich, J., concurs
Waite, J., concurs
APPROVED:
 ------------------------- Gene Donofrio Judge