OPINION
Appellant, Sheldon Jackson, appeals the Trumbull County Court of Common Pleas' judgment entry overruling his post-sentence motion to withdraw his guilty plea.
The record reveals that on August 30, 1993, at approximately 11:00 p.m., Theodore Emerson ("Theodore"), age seventy-eight, and Cathryn Emerson ("Cathryn"), age seventy-two, were at their residence located at 1444 Jefferson, S.W., Warren, Ohio, when three males entered into their home by force and brutally attacked them. Neighbors heard screams and called the Warren Police Department, who was dispatched at 11:26 p.m.
Upon arrival at the scene, Officer Daniel Manson found Theodore at the bottom of the stairs leading to the basement. Theodore was unconscious and severely beaten. Carolyn was found in the front bedroom of the house and also was unconscious, bloody, and suffered from multiple stab wounds. Both victims were immediately taken to St. Joseph's Riverside Hospital and were admitted in critical condition. Theodore died from his injuries on October 7, 1993.
According to neighbors, the three perpetrators ran from the Emerson residence to a house located at 1475 Jefferson, S.W., Warren, Ohio. Police then went to that location and questioned Lisa Clemmons ("Ms. Clemmons"), who resided there. Ms. Clemmons stated that appellant, James Gaddis ("Gaddis"), and Carvin Clemmons ("Carvin"), had been there and left in a red Honda automobile owned by Gaddis. At approximately 12:30 a.m. on August 31, 1993, police officers returned to Ms. Clemmons' residence and found appellant, Gaddis, and Carvin eating McDonald's hamburgers on the porch. At that time, a Warren police officer noticed that there was a green hat in the back of Gaddis' automobile with blood on it. Upon a police request, all three individuals voluntarily drove their vehicle to the police station for questioning. While at the police station, Carvin, age eighteen, waived his constitutional rights and provided a confession stating that he and appellant attacked Theodore and Carolyn Emerson. Appellant, age twenty-two at the time, also confessed to the attempted murder and aggravated burglary against the Emersons. Consequently, appellant was charged with two counts of attempted murder, in violation of R.C. 2923.02, and one count of aggravated burglary, in violation of R.C. 2911.11.
After being indicted by a grand jury on six criminal counts, appellant entered a written plea of guilty on August 5, 1994 to five counts: Count One, attempted murder, in violation of R.C.2923.02 and 2903.02; Count Three, aggravated burglary, in violation of R.C. 2911.11(A)(1) and (3); Count Four, aggravated robbery, in violation of R.C. 2911.02(A)(2); Count Five, robbery, in violation of R.C. 2911.01(A)(2); and Count Six, aggravated murder with specifications of aggravating circumstances, in violation of R.C. 2929.04(A)(7) and (A)(5). Count Two was dismissed by virtue of the fact that it was superceded by Count Six. In return for the guilty plea, the State did not seek the death penalty and recommended a minimum sentence of twenty years on the aggravated murder count. A three-judge panel accepted appellant's plea on August 5, 1994.
On August 5, 1994, the panel of three judges sentenced appellant to a period of ten to twenty-five years on counts one, three, and four; to a period of eight to fifteen years, on count five, to run concurrently with counts one, three, and four; and life imprisonment on count six, with no eligibility for parole for twenty years.
On February 16, 1995, appellant filed a motion to withdraw his guilty plea. The trial court subsequently overruled appellant's motion. On June 17, 1998, appellant filed a second motion to withdraw his guilty plea pursuant to Crim.R. 32.1. In a one sentence judgment entry filed on September 15, 1998, the trial court overruled appellant's second motion to withdraw his plea. Appellant now timely files the instant appeal pro se, raising the following errors:
 "[1.] The trial court erred in denying [appellant's] motion to withdraw his guilty plea without first holding an evidentiary hearing upon the allegations made upon his oath.
 "[2.] [Appellant] was denied due process of law when the trial court failed to strictly comply with the mandatory provisions of criminal rule 11 and R.C. 2945.06 during the plea colloquy.
 "[3.] [Appellant] was denied [his] Sixth Amendment right when the trial court expressly informed him that he waived his right to appeal it's sentence to this court."
Appellant supports his first assignment of error by citing toState v. Peterseim (1980), 68 Ohio App.2d 211, in which the appellate court established a four-prong test to be applied when a trial court is considering whether to grant a motion to withdraw a guilty plea. As part of the four-prong analysis, the trial court is required to conduct a full hearing to determine if the plea was free and voluntary. Appellant further claims that his plea was not free and voluntary because he intended only to admit guilt to the charge of involuntary manslaughter, and because he was under mental stress to plead guilty through the advice of his lawyer. Finally, he contends that his family's distress over the situation caused him to think with an unclear mind.
Contrary to appellant's contentions, the four-pronged analysis set forth in Peterseim applies only to a presentence motion to withdraw. Id. at 213; State v. Legree (1988), 61 Ohio App.3d 568,574. Indeed, the Peterseim court recognized differing policy considerations behind pre-sentence and post-sentence motions to withdraw when it stated, "`if a plea of guilty could be retracted with ease after sentence, the accused might be encouraged to plead guilty to test the weight of potential punishment, and withdraw the plea if the sentence were [sic] unexpectedly severe.'"Peterseim, 68 Ohio App.2d at 213, quoting Kadwell v. UnitedStates (C.A. 9, 1963), 315 F.2d 667, 670.
In providing a correct analysis of the law as it affects a post-sentence motion to withdraw, we begin with Crim.R. 32.1, which states that the trial court may set aside a judgment of conviction and permit a defendant to withdraw his or her plea in order to correct manifest injustice. Importantly, when a motion to withdraw a guilty plea is made after sentencing, the defendant "has the burden of establishing the existence of manifest injustice." State v. Smith (1977), 49 Ohio St.2d 261, paragraph one of the syllabus. Moreover, a Crim.R. 32.1 motion is addressed to the sound discretion of the trial court, and the "good faith, credibility and weight of the movant's assertions in support of the motion are matters to be resolved by that court." Id. at paragraph two of the syllabus. In addition, an undue delay between the occurrence of the alleged reason for withdrawal of a guilty plea and the filing of the Crim.R. 32.1 motion is a factor adversely affecting the movant's credibility and militates against granting the motion. Id. at paragraph three of the syllabus.
A reviewing court is precluded from reversing the trial court's denial of a Crim.R. 32.1 motion absent a finding of an abuse of discretion. State v. Hamed (1989), 63 Ohio App.3d 5, 7; State v.Blatnik (1984), 17 Ohio App.3d 201, 202. Most importantly, a hearing on a post-sentence motion to withdraw a guilty plea is not required if the facts alleged by the defendant, and accepted as true by the court, would not require that the guilty plea be withdrawn. Blatnik, 17 Ohio App.3d at 204; Hamed,63 Ohio App.3d at 7.
In reviewing appellant's reasons as to why he claims that his motion to withdraw must be granted, we conclude that he has failed to carry his burden and demonstrate the presence of manifest injustice. There is no manifest injustice with regard to his contention that he intended only to admit guilt to the charge of involuntary manslaughter and not to the count of aggravated murder, because the written plea agreement clearly states that by signing it, he would be pleading guilty to that charge. Moreover, in the "Finding on Guilty Plea to Indictment" that was signed by appellant, he expressly acknowledged that he had purposefully
caused the death of Theodore while committing or fleeing immediately after committing aggravated robbery and aggravated burglary. Also, the document was signed by appellant and was done while under the representation of counsel who has not been shown as lacking in diligence or competence.
Next, appellant's claim that he pleaded guilty while of an unclear mind due to pressure from his counsel and his family's distress is equally flawed in demonstrating manifest injustice. The alleged pressure applied by his attorney occurred when he was encouraged to plead guilty because if he did not, then he could face the death penalty. Indeed, an attorney retains a duty to inform his client of potential sentences. See State v. Williams
(1989), 65 Ohio App.3d 70, 74.
Furthermore, as evidenced by Crim.R. 11(C)(2)(a), the trial court is directed to determine, before accepting a guilty plea, that a defendant is entering his or her guilty plea voluntarily and with an understanding of the maximum penalty involved. The failure of the trial court to inform a defendant of the maximum possible sentence would contravene the mandates of Crim.R. 11(C) and would permit a defendant to later withdraw his or her guilty plea. Williams, 65 Ohio App.3d at 74. Accordingly, it is clear that Ohio law does not favorably accommodate a defendant's argument that his or her plea was involuntary due to the undue stress that resulted from being informed of the maximum possible sentence that could be imposed.
Most importantly, in advancing his claims regarding undue stress, appellant merely submits self-serving, unsubstantiated statements that his attorney and family unduly pressured him into accepting the guilty plea, which was done with an unclear mind and, thus, involuntary. In light of the record before us, appellant's decision to plead and escape the death penalty was a reasonable decision and has not been shown as being performed involuntarily.
Finally, the excessive length of time between the time that the plea was entered and the time that the Crim.R. 32.1 motion was filed with the trial court is a factor that weighs against permitting appellant's plea to be withdrawn. Consequently, because appellant has failed to demonstrate any manifest injustice in precluding a withdrawal of his guilty plea, even if the facts were accepted as true, the failure of the trial court to grant a hearing was not in error. Therefore, appellant's first assignment of error is meritless.
In the second assignment of error, appellant avers that the three-judge panel denied him due process of law by failing to strictly comply with the mandatory requirements of Crim.R. 11 and R.C. 2945.06 during the plea colloquy.
In analyzing this assignment of error, we are barred from addressing the merits of appellant's argument due to the fact that there has been no submission into the record of the transcript of the plea colloquy. In State v. Raimer (Dec. 29, 1998), Geauga App. No. 97-G-2119, unreported, this Court dealt with this issue. In that case, we held that the appellant is required to supply this Court with a transcript of the plea hearing when it is necessary to adjudicate an appeal. Id. at 9. We further wrote:
 "[P]ursuant to App.R. 9, appellant [the defendant] is required to supply this court with a transcript of prior proceedings in order to demonstrate the claimed error. A review of the record reveals that appellant has failed to supply this court with a transcript of the plea hearing, and has failed to cure such defect in accordance with App.R. 9(C), (D), or (E), if a transcript was unavailable. Therefore, this court must presume regularity in the prior proceedings. Accordingly, appellant's third assignment of error is not well-taken." Id.
In the case sub judice, appellant has failed to include a copy of the transcript of the plea colloquy and has not availed himself of the ability to cure such defect in accordance with App.R. 9(C), (D), or (E), if a transcript was unavailable. The only transcript included in the record consists of the sentencing transcript. Consequently, appellant is unable to demonstrate the assigned error. Thus, we must presume regularity and conclude that appellant's second assignment of error is not well-taken.
In his third assignment of error, appellant contends that he was denied his Sixth Amendment due process rights when the trial court informed him that he had waived his right to appeal his sentence to this Court.
Pursuant to App.R. 12(A)(2) and 16(A)(6), appellant has the affirmative duty to support each and every assignment of error with appropriate references to the record which demonstrate the claimed error. The failure to comply with App.R. 12(A)(2) and 16(A)(6) permits a reviewing court to disregard the error assigned. In this case, appellant has failed to reference the part of the record where the trial court expressly informed him that he waived his right to appeal his sentence to this Court. Moreover, in our review of the record, we were unable to find any instance where the trial court made any such representation. Also, appellant has not suffered any prejudice by not being informed of his right to an appeal, because he has initiated an appeal in the instant matter from which this opinion is issued in response. Accordingly, appellant's third assignment of error is not well-founded.
As a final word, this Court has taken extraordinary efforts to consider appellant's assignments of error due to the nature of the crime committed and the penalty imposed. In fact, this Court need not have addressed the merits of the errors assigned because they are barred from now being raised because they constitute resjudicata.
The doctrine of res judicata precludes a party from raising any claim that either was raised or could have been raised before the trial court or on appeal. State v. Perry (1967), 10 Ohio St.2d 175, paragraph nine of the syllabus. Res judicata also applies to motions to withdraw a guilty plea filed pursuant to Crim.R. 32.1.State v. Jeffries (July 30, 1999), Wood App. No. L-98-1316, unreported, at 2, 1999 WL 550251.
In the present matter, the instant appeal arises from appellant's second motion to withdraw. Appellant filed a previous motion to withdraw on February 16, 1995. The first motion was overruled by the trial court and was not appealed to this Court. Although the errors advanced in this appeal were not raised in the first motion to withdraw, there was no impediment to appellant having raised the instant errors in the prior motion to withdraw. Thus, under Perry, appellant is precluded from raising each of the errors assigned in this appeal because they could have been previously raised before both the trial court.
For the foregoing reasons, appellant's assignments of error are without merit, and the judgment of the Trumbull County Court of Common Pleas is affirmed.
 ______________________________ PRESIDING JUDGE DONALD R. FORD
CHRISTLEY, J., NADER, J., concur.