OPINION
This case is before this court on Gail Pape's amended notice of appeal from the trial court's judgment entry of sentencing of December 8, 1999, and on the notice of appeal from the trial court's entry of November 14, 2000, denying a second petition for post conviction relief. The State of Ohio has not appeared in this appeal.
 A.
A comprehensive chronology of events is essential to an understanding of our disposition of the assignments of error.
September 20, 1999: Pape is indicted on four counts of trafficking in cocaine.
December 1, 1999: Pape pleads guilty to count 2, a third degree felony. He is sentenced to four years in prison and is fined $5,000. His driver's license is suspended for five years. See entry of December 8 and transcript of December 1 proceedings.
March 8, 2000: Pape moves pro se for judicial release.
March 14, 2000: Pape files motion to vacate or suspend payment of fines due to his claim of indigency. Hearing on motions for judicial release and vacation or suspension of fines; Pape and the prosecutor address the trial court.
March 16, 2000: Trial court overrules motion for judicial release; awards execution to State on Pape's 1986 Jaguar for sale, with proceeds to be applied to $5,000 fine.
March 21, 2000: Pape moves pro se to withdraw guilty plea.
March 29, 2000: Trial court overrules motion to withdraw guilty plea without a hearing.
October 16, 2000: Pape files pro se petition for post conviction relief.
November 14, 2000: Trial court overrules petition.
December 14, 2000: Pape, by counsel, files second petition for post conviction relief, notice of appeal from November 14 entry overruling first petition for post conviction relief, and a motion in this court for leave to file a delayed appeal.
March 1, 2001: This court sustains motion to file delayed appeal, orders Pape to file amended notice of appeal from December 8, 1999, sentencing entry, and states that appeal will proceed as to the November 14, 2000 entry.
March 2, 2001: Pape, by counsel, files amended notice of appeal.
May 18, 2001: Pape's appellate brief is filed.
 B.
On appeal, Pape advances four assignments of error:
 1. A GUILTY PLEA MUST BE REVERSED IF UNDER THE TOTALITY OF THE CIRCUMSTANCES THE DEFENDANT DID NOT SUBJECTIVELY UNDERSTAND THE IMPLICATIONS OF HIS PLEA AND THE RIGHTS HE WAS WAIVING.
 2. A HEARING SHOULD HAVE BEEN GRANTED ON APPELLANT'S MOTION TO WITHDRAW GUILTY PLEA.
 3. A GUILTY PLEA MAY MUST [sic] BE VACATED WHERE, BUT FOR THE INEFFECTIVENESS OF COUNSEL, THE PLEA WOULD NOT HAVE BEEN MADE.
 4. NO PERSON SHALL BE DEPRIVED OF LIFE, LIBERTY OR PROPERTY WITHOUT DUE PROCESS OF LAW.
It is immediately apparent that only the first assignment is embraced by the amended notice of appeal, and none of the assignments are embraced by the original notice of appeal. App.R. 3(F) permits us to allow amendment of a timely notice of appeal upon such terms as are just. The problem here is that the amended notice of appeal is limited by its terms to the December 8, 1999 sentencing entry, and the original notice of appeal is limited by its terms to the November 14, 2000 entry. However, assignments 2, 3, and 4 relate to the trial court's orders of March 29 and March 16.
Although we interpreted Pape's motion for leave to file a late appeal as being confined to the December 8, 1999 sentencing entry, and Pape has never contended that our interpretation was too narrow, his motion did touch upon the overruling of his motion to withdraw guilty plea, which is the subject of assignments 2 and 3. His motion did not address the forfeiture issue, which is the subject of assignment 4. Because we might be inclined to allow further amendment to the current amended notice of appeal if requested by Pape, and given the State's apparent indifference to Pape's appeal, in the interest of judicial economy we will, on our own motion, further amend the current amended notice of appeal to embrace the entries of March 16 and March 29, 2000, which are the subject of assignments 2-4.
 C.
In support of his first assignment, Pape makes arguments that are germane to his motion to withdraw guilty plea and arguments that are germane to his contention that the plea proceedings of December 1, 1999 were defective. Because his amended notice of appeal is directed to the December 8 sentencing entry that memorializes the plea proceedings of December 1, we will confine our consideration of this assignment to the arguments relating to the propriety of the plea proceedings on December 1, and consider the other arguments in connection with our disposition of assignments 2 and 3.
Pape contends that the trial court did not substantially comply with Crim.R. 11(C). Pape claims his trial attorney told him he would be eligible for judicial release after serving six months of his sentence. Thus, Pape is apparently contending that the trial court failed to determine that he understood he was "not eligible for probation or . . . community control sanctions." Civ.R. 11(C)(2)(a).
Pape contends that the record demonstrates that he was "mentally troubled," that he had to be prompted to verbalize his answers, that the trial court was unclear as to the mandatory nature of the sentence — whether any, all, or just some of the sentence was mandatory, that the trial court failed to inquire into his mental condition or whether he was under the influence of medication, and that the statements of the prosecutor and the written plea form added to his confusion.
In considering this assignment, we are confined to the transcript of the plea proceeding December 1 and the written plea of guilty. After the court accepted his plea of guilty, Pape stated in mitigation that he had been "in Mercy Mental Health for the past two years from clinical depression." In our judgment, this, without more, was not enough to require the trial court to reopen the Rule 11 colloquy to further inquire into Pape's mental condition. The record reveals but one instance where Pape nodded and was told by the judge to answer verbally.
In announcing the plea agreement, the prosecutor stated "a prison term is mandatory for this offense . . . (and) the State is recommending four years in the state penitentiary . . ." In its colloquy with Pape before accepting his plea, the trial court stated, and Pape responded:
 There's also a suspension of driving rights in the State of Ohio for five years. A prison term is presumed mandatory in this case.
 Under the plea agreement the State is recommending pursuant to the plea agreement that you be sentenced to four years at the state penitentiary on this charge, and the Court will impose that sentence of four years in the state penitentiary.
Do you understand that?
THE DEFENDANT: Yes, sir.
The written plea of guilty, which was on a standard form, called for a yes or no response to the following: "Prison Term is Mandatory/Consecutive" to which the handwritten response was yes. The handwritten statement of the plea agreement was "State will dismiss Cts 1, 3 4 and recommends 4 yrs OSP, mandatory fine and license suspension."
The foregoing constitutes what appears of record before Pape entered his plea of guilty and what is relevant to Pape's contention that he didn't understand that the sentence was mandatory. Pape points to other language of the trial court during sentencing, but that occurred after Pape entered his plea and need not be considered.
Having considered the transcript — including Pape's affirmative responses when asked if he understood what was being said — we conclude that Pape manifested an understanding that he faced a mandatory sentence of four years.
We are not persuaded that the prosecutor's statement that the State "is recommending" four years and similar language in the plea agreement confused Pape. The sentencing range for a third degree felony is 1, 2, 3, 4, or 5 years, R.C. 2929.14(A)(3), and the prosecutor, while announcing the plea agreement, stated that the maximum sentence was five years. There is a significant difference between a "mandatory sentence" and a "recommendation" as to what that sentence should be. This record fails to demonstrate that Pape failed to understand this difference, or that he believed that the prosecutor's recommendation of a particular sentence meant that the sentence was not mandatory. Nor, considering the entire record as it relates to the plea proceeding, are we persuaded that the occasional use of the adjective "mandatory" before the words "fine" and/or "license suspension" but not before "sentence" demonstrably caused Pape to believe that the sentence was not mandatory.
Having concluded that the record fails to demonstrate that Pape didn't understand that he faced a four-year mandatory sentence, we nevertheless are constrained to further conclude that the Crim.R. 11(C) colloquy was fatally flawed. We believe there is merit in Pape's contention that even though a sentence is mandatory, a defendant might still reasonably understand that he is eligible for judicial release after having served a portion of his prison sentence. Of course, this is not possible. See R.C.2929.20(A)(1)(a).
Crim.R. 11(C)(2)(a) provides:
 (2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:
 (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
Although the trial court was unaware of the alleged assurance of Pape's trial counsel that he would be eligible for judicial release, it was nevertheless required to determine that Pape understood he was ineligible for community control sanctions, Crim.R. 11(C)(2)(a), which are imposed in the event of judicial release. R.C. 2929.20(I). The trial court made no inquiry of Pape's understanding that he was not eligible for community control sanctions, which ineligibility was integral to his receiving a mandatory sentence. Nor did the written plea of guilty mention Pape's ineligibility for community control sanctions. The legislature saw fit to expressly provide that a defendant serving a mandatory sentence was ineligible for judicial release. R.C. 2929.20(A)(1)(a). We conclude that expressing that Pape's sentence was mandatory, without more, was not sufficient to inform him that he was ineligible for judicial release.
In our judgment, implicit in the duty imposed by Crim.R. 11(C)(2)(a) to determine that the defendant understands that he is ineligible for community control sanctions is the further duty to determine that he also understands he is ineligible for judicial release, which results in the imposition of community control sanctions.
The phrase "at the sentencing hearing" at the end of Crim.R. 11(C)(2)(a) appears to have been added when the rule was amended to embrace community control sanctions as well as probation in the aftermath of the overhaul of criminal law effective July 1, 1996. Arguably, the phrase only requires the trial court to determine that the defendant understands he cannot immediately be placed on probation or on community control when he appears for sentencing. If this is the intent of the phrase, the 1998 staff note to Crim.R. 11 is strangely silent. The phrase would also be at odds with case law dealing with the failure of the trial court to determine that a defendant understands he is ineligible for shock probation. State v. Brigham (Feb. 27, 1997), Franklin App. No. 96APA07-964, 970, unreported; State v. Colbert (1991), 71 Ohio App.3d 734. Brigham was a late appeal. Colbert was an appeal from the overruling of a motion to withdraw a guilty plea. In both of these cases, the appellate courts found reversible error, or a basis for vacating the guilty plea, where the trial court failed to determine that the defendant understood he was ineligible for shock probation which, like judicial release, is granted only after the defendant has served a portion of his sentence.
To be sure, in those cases — unlike the case before us — the record of the plea proceeding reflected that at the time the defendant pleaded guilty, the defendant believed he was eligible for shock probation. Here, the record of the plea proceeding does not reflect Pape's claimed belief that he was eligible for judicial release. Nevertheless, we conclude that requiring the trial court to determine that a defendant understands he is ineligible for judicial release is a salutary interpretation of Crim.R. 11(C)(2)(a) which furthers the purpose of Crim.R. 11(C)(2)(a) that pleas of guilty and no contest be voluntarily and intelligently made, i.e., "with full understanding of the consequences," Brigham, supra, citing Kercheval v. United States (1927),274 U.S. 220, 223.
The first assignment is sustained. The plea of guilty and sentence will be vacated, and the matter will be remanded to the trial court for further proceedings.
 D.
We will treat the second and third assignments together because they deal with the same essential contention: that Pape's trial counsel assured him he would be eligible for judicial release.
On March 8, 2000, Pape moved pro se for judicial release. The trial court conducted a hearing March 14 at which Pape addressed the court. Pape asserted several grievances, including an assertion that his trial counsel told him he was eligible for judicial release.
The trial court overruled the motion for the reason that the mandatory sentence precluded consideration of judicial release, but suggested to Pape that he move to withdraw his guilty plea. Pape did so on March 21, 2000. Although he cited three reported cases, Pape did not assert any specific grounds for relief. As it pertains to these assignments, Pape did not assert that his trial counsel had assured him he was eligible for judicial release.
A motion to withdraw a guilty plea should normally precipitate a hearing — see State v. Peterseim (1980), 68 Ohio App.2d 211
— unless the facts alleged by the defendant and accepted as true by the trial court would not require the court to permit a guilty plea to be withdrawn. State v. Blatnik (1984), 17 Ohio App.3d 201.
Looking only at Pape's motion to withdraw his guilty plea, which contained no specific basis for relief, we would be inclined toward saying there was no error under the rule of Blatnik. However, the trial court had but seven days earlier heard Pape say he had been assured by trial counsel he was eligible for judicial release. Implicit in this statement was the assertion that this assurance induced him to plead guilty. In response to Pape's statements, the trial court suggested he file a motion to vacate his guilty plea. Thus, we believe there was a factual basis for relief put before the trial court. This factual basis for relief, however, was comprised entirely of Pape's own self-serving statements that his counsel had told him he was eligible for judicial release. While erroneous legal advice as to eligibility for judicial release that induces a plea of guilty might constitute ineffective assistance of counsel, Pape's self-serving assertions, without more, were an insufficient basis for an evidentiary hearing or relief pursuant to Crim.R. 32.1. See State v. Kapper (1983), 5 Ohio St.3d 36, applied in a Crim.R. 32.1 context by State v. Talley (Jan. 30, 1998), Montgomery App. No. 16479, unreported.
The second and third assignments are overruled.
 E.
In his fourth assignment, Pape claims his car was forfeited without due process of law. On March 14, 2000, Pape moved for vacation or suspension of fines due to indigency which the trial court heard that day, along with Pape's motion for judicial release. At the hearing, the State requested an order of forfeiture so a car belonging to Pape could be sold, and the proceeds applied to a $5,000 mandatory fine the trial court had imposed. Pape claims he was not on notice that his car was subject to forfeiture — hence, his claim that he was deprived of his property without due process of law. We disagree. Pape's motion to vacate or suspend fines due to indigency put at issue his claim of indigency and invited the response of the prosecutor that he was not indigent, and that his car should be forfeited, sold, and the proceeds applied to the fine. However, the propriety of the forfeiture appears to have been based on the conviction for trafficking in cocaine. Based on our disposition of the first assignment, the order of forfeiture must be reversed.
The fourth assignment is sustained.
 F.
Pursuant to our disposition of the first assignment of error, the conviction, sentence, and order of forfeiture will be reversed, and the matter will be remanded for further proceedings consistent with this opinion.
YOUNG, J., concurs, GRADY, J., dissenting.