OPINION
Defendant-appellant Arika Lane appeals from her conviction and sentence, following a guilty plea, for Attempted Assault. Lane asserts that her plea of guilty to Attempted Assault was not knowing and voluntary, that her trial counsel was ineffective, that the trial court erred by denying her motion to vacate her plea, without a hearing, and that the trial court erred when it denied her motion to continue her trial date.
The mere fact that Lane was disappointed in her hope that the trial judge would accept the prosecutor's recommendation of a suspended sentence did not render her plea other than knowing and voluntary, in view of the trial court's clear statement, on the record, that the trial court would not be bound by the prosecutor's recommendation.Lane predicates her assertion that her trial counsel was ineffective upon his failure to have talked to the judge before the tendering of the plea, to determine what sentence the trial judge would likely impose. In the absence of any indication in this record that the trial judge would have been amenable to a discussion of the likely sentence, before Lane tendered her plea, we cannot find that trial counsel was ineffective for having failed to pursue that course.
Finally, Lane's guilty plea waived any error in the trial court's having denied her motion to continue her trial date.
Accordingly, the judgment of the trial court is Affirmed.
 I
Lane and her sister, Rikki Lane, were charged with Assault upon Jessica Isaac. Following her arraignment, Lane was scheduled to be tried on July 11, 2001. Her sister, Rikki, was scheduled to be tried on August 6, 2001. On July 10, 2001, the day before Arika Lane's scheduled trial, David Stenson filed a notice of appearance and request for a trial continuance, on behalf of both sisters. This motion was denied.
The next day, July 11, 2001, the day of Arika Lane's scheduled trial, the two sisters appeared before the trial judge. When the trial judge began discussing the matter with Arika Lane, their attorney was not present, but he arrived shortly thereafter. Their attorney advised the trial court that he and the prosecutor had entered into a plea agreement, whereby both sisters would plead guilty to Attempted Assault. The plea hearing continued as follows:
 THE COURT: All right. It's my understanding that the prosecutor is willing to amend these two charges to attempted assault; is that right?
 MR. LEWIS [representing the State]: That is correct, Your Honor. In an attempt to resolve the matter, we are reducing the charge to attempted assault as an M-2.
 THE COURT: Mr. Stenson, does your client, Arika Lane, wish to accept that offer?
MR. STENSON: Yes, she does, Your Honor.
THE COURT: Is she pleading — how is she pleading?
MR. STENSON: She is pleading guilty to the charge.
THE COURT: And how about Rikki Lane?
MR. STENSON: Same thing, Your Honor.
THE COURT: Okay.
 Now, it's important that Rikki and Arika both understand their rights and the rights that they are giving up, if they plead guilty. So I want you both to listen to this. Each of you has the right to remain silent as to the merits of the charge; the right to a trial to a judge; the right to a trial to a jury, although that was not requested timely. You have the right to an — you have Counsel. You have the right to subpoena witnesses, to cross-examine witnesses and the right to require the City of Xenia to prove every part of this charge beyond a reasonable doubt.
Do you understand that, Arika?
DEFENDANT ARIKA LANE: Yes, ma'am.
THE COURT: Do you understand that, Rikki?
DEFENDANT RIKKI LANE: Yes, ma'am.
 THE COURT: If you plead guilty to attempted assault, a second degree misdemeanor, you are giving up those rights.
Do you understand that Arika?
DEFENDANT ARIKA LANE: Yes.
THE COURT: Do you understand that Rikki?
DEFENDANT RIKKI LANE: Yes, ma'am.
 THE COURT: The maximum legal penalty for this offense for each of you would be 90 days in jail and a $750 fine.
Do you understand that, Arika?
DEFENDANT ARIKA LANE: Yes, ma'am.
THE COURT: And Rikki?
DEFENDANT RIKKI LANE: Yes, ma'am.
 THE COURT: The prosecutor makes a recommendation. The prosecutor is not the sentencing person. He makes a recommendation. He negotiates with your Counsel. His recommendation carries some weight. If I disagree with that recommendation, I can give you up to 90 days in jail and a $750 fine.
Do you understand that, Arika?
DEFENDANT ARIKA LANE: Yes, ma'am.
THE COURT: Do you understand that, Rikki?
DEFENDANT RIKKI LANE: Yes, ma'am.
 THE COURT: Knowing all of that, do you want to plead guilty to attempted assault, a second degree misdemeanor, Arika?
DEFENDANT ARIKA LANE: Yes, ma'am.
THE COURT: Rikki?
DEFENDANT RIKKI LANE: Yes, ma'am.
At this point, the prosecutor excused himself to take care of other matters, and the trial court heard a statement from the victim advocate's office.
The trial court then made an inquiry of Rikki Lane concerning the circumstances of the offense:
THE COURT: . . .
 So I'm going to ask Rikki Lane, what was this about?
 DEFENDANT RIKKI LANE: It was — what was the fight about?
THE COURT: Yes.
 DEFENDANT RIKKI LANE: From — I don't know what it was about, but, from the statement that I have received that they made out, they had wrote out a statement that it was over a guy.
 THE COURT: Okay. Wait a minute. You were involved in this and you don't know what it was about?
 DEFENDANT RIKKI LANE: No, I was not involved, ma'am. I was there.
 THE COURT: You just pled guilty to attempted assault.
DEFENDANT RIKKI LANE: Yes, ma'am.
 THE COURT: And you are telling me you did not do that?
 MR. STENSON: Judge, she was — her statement is that she was there. In order to get this thing taken care of — she never threw a punch nor physically hit this young lady.
DEFENDANT RIKKI LANE: Correct.
 THE COURT: Let me ask her, then, and I'll ask her to be the one that answers.
What was the dispute about? You don't know?
DEFENDANT RIKKI LANE: A man, a boy.
THE COURT: Who was the dispute between?
 DEFENDANT RIKKI LANE: An ex-boyfriend, I guess, one of theirs.
THE COURT: And —
DEFENDANT RIKKI LANE: And —
THE COURT: And who on your side?
DEFENDANT RIKKI LANE: Who on my side?
MR. STENSON: Your sister.
 DEFENDANT RIKKI LANE: Okay, my sister. It was her and the lady or the young girl that was doing this to us or whatever. I guess the young lady that my sister had fought, okay, the guy now is my sister's boyfriend now and was.
THE COURT: So that is a jealousy thing?
DEFENDANT RIKKI LANE: Yes, ma'am.
THE COURT: Is that right?
DEFENDANT ARIKA LANE: Yes, ma'am.
There then followed a colloquy between the trial court and defense counsel, after which the trial court imposed sentence, as follows:
 THE COURT: The bottom line is I can't tolerate this kind of violence and this kind of injury.
So I'm giving you each 80 days in jail and I'm —
 MR. STENSON: Come here. Come back here. Relax, relax, relax. Listen.
THE COURT: Nobody cries when the assault happens.
MR. STENSON: Listen, listen. Listen to the Judge.
 THE COURT: And a $500 fine each because otherwise it minimizes it.
MR. STENSON: And —
 THE COURT: You will probably not be in jail that long, but you are not going to go without getting jail time. The jail is going to release you because they are overcrowded. When you are released, you are on probation.
 If these — if these victims — this victim and her sister get harassed anymore, we are going to look very closely at who harassed them. Do you understand that? So my suggestion to you is that you tell all your friends that these people are not to be approached. I am not penalizing you for that other behavior. I'm penalizing you because you approached these two girls and participated in them getting injured while they were trying to get away. This was not a mutual fight. This was an assault. Attempted assault is how it is convicted.
 MR. STENSON: Judge, is there any mitigation as far as — is there any mitigation as far as these young ladies as far as the time is concerned? Again —
THE COURT: I'll talk to you in a second about this.
 MS. SINGER: Will there be restitution and a no-contact order?
THE COURT: Yes, there's restitution.
Let's step out for a minute.
Arika Lane appeals from her conviction and sentence for Attempted Assault. II
Lane's First Assignment of Error is as follows:
 DEFENDANT-APPELLANT'S PLEA OF GUILTY WAS NOT MADE VOLUNTARILY, KNOWINGLY AND/OR INTELLIGENTLY.
Lane states the essence of her argument as follows:
 After reading the entire transcript, it is obvious that the pleas of guilty by Defendant-Appellant and by her sister, were induced by false promises and assurances by the Prosecutor and Defense Counsel that they would receive no jail time. Obviously, Defendant-Appellant was unaware of the effect that her plea of guilty would have on her upcoming probation revocation hearing.
There is a document in the record reflecting that the prosecutor was recommending, in the cases of both sisters, that they receive suspended sentences. However, the portion of the transcript of the disposition hearing quoted above reflects a clear statement by the trial judge that she would not be bound by the prosecutor's recommendation. Furthermore, the trial judge elicited from each defendant her personal acknowledgment that she understood that the trial judge would not be bound by the prosecutor's recommendation.
Under these circumstances, Lane had an understandable hope that the trial judge would follow the recommendation of the prosecutor, and suspend her sentence. However, the trial judge had made it clear to Lane that there was no assurance that the trial judge would follow that recommendation. Lane's disappointment at the trial judge not following the prosecutor's recommendation did not render Lane's plea other than knowing and voluntary.
Lane's First Assignment of Error is overruled.
 III
Lane's Second Assignment of Error is as follows:
 THE DEFENDANT-APPELLANT WAS INEFFECTIVELY REPRESENTED BY COUNSEL AND THEREFORE DENIED HER CONSTITUTIONALLY GUARANTEED RIGHTS UNDER THE SIXTH
AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND HER RIGHTS UNDER THE OHIO CONSTITUTION.
Lane first contends that her trial counsel was ineffective for not having entered an "Anders plea," both sisters having protested their innocence at the plea hearing. Presumably, this is a reference to an Alford plea, pursuant to North Carolina v. Alford (1970), 400 U.S. 25,91 S.Ct. 160, 27 L.Ed.2d 162. The record does not support Arika Lane's contention that she protested her innocence. Although we would accept a characterization of Rikki Lane's statements, during the plea hearing, as a protestation of innocence, those statements implicated Arika Lane as having committed the assault upon Jessica Isaac, and Arika Lane confirmed Rikki Lane's account of the incident in response to the trial judge's inquiry, thereby acknowledging her guilt.
Lane contends that her trial counsel "should have requested a side bar conference or an in chambers conference to make certain that [the trial judge] would go along with the plea bargain between the prosecutor and himself." An attorney admitted to the practice of law in Ohio is presumed competent. Lane has not directed our attention to any rule, law or case that would require a trial judge to inform a defendant considering a plea offer concerning the sentence that would likely be imposed. In the absence of anything in the record to suggest that the trial judge in this case would have been amenable to a request for assurances, before the defendant tendered her plea, concerning the sentence that would be imposed, we cannot find that trial counsel was ineffective for having failed to request a discussion along those lines. Similarly, we cannot find that trial counsel was ineffective for having failed to request a discussion with the trial judge concerning the disposition of a probation revocation hearing before the hearing has taken place.
Finally, Lane argues that her trial counsel "should have immediately moved to withdraw both pleas of guilty." Trial counsel did move to vacate her plea. Because sentence had already been imposed, an immediate motion to vacate the plea would have been governed by the "to correct manifest injustice" standard set forth in Crim.R. 32.1. We can see no reason why Lane would have been better served by an immediate motion, at bar, to vacate her plea.
Lane's Second Assignment of Error is overruled.
 IV
Lane's Third Assignment of Error is as follows:
 THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO SET THE MOTION TO VACATE FOR A FULL HEARING, INSTEAD RULING SUMMARILY ON SAID MOTION.
Lane's motion to vacate her plea contains the following argument:
 When asked why she was pleading guilty, she indicated it was because Mr. Stenson told her to do so and that she would be given no jail time in accordance with the plea bargain between Mr. Stenson and the Prosecutor.
 The Defendant was clearly deceived into pleading guilty based on the promise of no jail time. Prior to accepting the plea of guilty, the Court should have informed both the Prosecutor and the Defense Counsel and clearly should have informed the Defendant, that the Court would not accept that plea bargain.
The transcript of the plea hearing contradicts the first assertion quoted above. The record does reflect that the prosecutor recommended a suspended sentence. However, the transcript of the plea hearing includes a clear statement by the trial judge that she would not be bound by the prosecutor's recommendation, followed by the trial judge's eliciting from Lane that Lane understood that the trial judge would not be bound by the prosecutor's recommendation. Therefore, even if the allegations set forth in Lane's motion to withdraw her plea are credited in full, they establish, at most, that she hoped, based upon the agreement that her trial counsel had made with the prosecutor, that the trial court would be lenient, and impose no jail time. Unfortunately for Lane, the trial court was not disposed to be lenient. A defendant's disappointment at the sentence imposed is not a proper basis for the withdrawal of a plea. Furthermore, Lane has not directed our attention to any authority, and we are aware of none, for her proposition that the trial court was obliged to inform her, prior to accepting her plea, that jail time was going to be imposed notwithstanding the prosecutor's recommendation. A hearing on a post-sentence Crim. R. 32.1 motion to withdraw a plea is not required if the facts alleged by the defendant and accepted as true by the trial court would not require the court to permit a guilty plea to be withdrawn. State v. Blatnik (1984), 17 Ohio App.3d 201, 204.
Lane's Third Assignment of Error is overruled.
 V
Lane's Fourth Assignment of Error is as follows:
 THE COURT ABUSED ITS DISCRETION, TO THE PREJUDICE OF DEFENDANT-APPELLANT, BY DENYING DEFENSE COUNSEL'S MOTION FOR CONTINUANCE.
Lane's trial was scheduled to begin on July 11, 2001. On July 10, 2001, Lane's trial counsel entered an appearance, and moved for a continuance of the trial date. This motion was denied.
The next day, Lane negotiated a plea of guilty to Attempted Assault. Her plea of guilty waived any previous errors by the trial court. The only exception would be if the denial of the motion for a continuance of the trial date effectively coerced Lane's plea, i.e., made it other than voluntary. The record does not reflect that Lane's plea was other than voluntary.
Lane's Fourth Assignment of Error is overruled.
 VI
All of Lane's assignments of error having been overruled, the judgment of the trial court is Affirmed.
BROGAN and YOUNG, JJ., concur.