[Cite as *State v. Harris*, 2014-Ohio-2633.]

COURT OF APPEALS
COSHOCTON COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. William B. Hoffman, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2013CA0013 |
| ISAAC HARRIS | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Criminal appeal from the Coshocton County
                             Common Pleas Court, Case No.
                             2008CR0033

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      June 16, 2014

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

JASON GIVEN                           THOMAS D. WHITE
Coshocton County Prosecutor           CHRISTOPHER M. WHITE
318 Chestnut Street                   ALYSSE GILES
Coshocton, OH 43812                   209 N. Washington Street
                                      Millersburg, OH 44654

*Gwin, J.*

{¶1} Defendant-appellant Isaac Harris ["Harris"] appeals from a May 6, 2013 judgment of the Coshocton County Court of Common Pleas overruling his post-sentence motion to withdraw his previously entered no contest pleas.

*Facts and Procedural History*

{¶2} Harris was originally indicted by the Coshocton County Grand Jury on March 31, 2008 on one count of aggravated robbery, a felony of the first degree, one count of attempted rape, a felony of the second degree and one count of kidnapping, a felony of the first degree. Harris was arraigned on these charges on April 7, 2008 and entered pleas of not guilty to all counts.

{¶3} The original indictment was later amended on April 28, 2008. Harris was arraigned pursuant to the amended indictment on May 5, 2008. Harris entered pleas of not guilty to the charges contained in the amended indictment.

{¶4} Harris, through his counsel, entered an affirmative defense of not guilty by reason of insanity. Harris at that time also alleged that he was not competent to stand trial. The trial court ordered that Harris be examined. Subsequently, the trial court found that Harris was competent to stand trial in a judgment entry filed on October 20, 2008.

{¶5} On January 20, 2009, Harris entered pleas of no contest to count one of the amended indictment aggravated robbery, and to count three of the amended indictment, kidnapping. The trial court granted the state's request to dismiss count two of the amended indictment. Following Harris' pleas of no contest the trial court found Harris guilty and ordered a presentence investigation report be prepared.

{¶6} A sentencing hearing was held on March 6, 2009. At that time, the court sentenced Harris to a penitentiary sentence of nine years for the aggravated robbery and nine years for the kidnapping, concurrent. A nunc pro tunc sentencing entry was filed on March 13, 2009.

{¶7} On April 24, 2013, Harris simultaneously filed a request with this Court to permit him a delayed appeal of the trial court's March 13, 2009 sentencing entry and a motion with the trial court to permit him to withdraw his pleas of no contest entered on January 20, 2009. The trial court subsequently denied his motion to withdraw his pleas, without hearing, on May 6, 2013.

{¶8} Harris then filed an additional notice of delayed appeal regarding his March 13, 2009 sentencing entry and on a direct appeal of the trial court's May 6, 2013 judgment entry denying Harris' motion to withdraw his pleas of no contest. The delayed appeal was disallowed and the parties are now before the court on Harris' direct appeal of the trial court's May 6, 2013 judgment entry denying his motion to withdraw his pleas.

*Assignments of Error*

{¶9} Harris raises three assignments of error,

{¶10} "I. THE TRIAL COURT ERRED BY FAILING TO HOLD A HEARING ON MR. HARRIS' MOTION TO WITHDRAW GUILTY PLEA.

{¶11} "II. THE TRIAL COURT'S DENIAL OF MR. HARRIS' MOTION TO WITHDRAW GUILTY PLEA WAS A "MANIFEST INJUSTICE.

{¶12} "III. MR. HARRIS' PLEA WAS NOT KNOWING, INTELLIGENT, AND VOLUNTARY BECAUSE HE WAS INCOMPETENT TO STAND TRIAL."

I.

{¶13} Harris first argues that the trial court erred when it overruled his motion to withdraw his previously entered pleas of no contest without conducting a hearing. We disagree.

{¶14} Crim.R. 32.1 provides that a trial court may grant a defendant's post-sentence motion to withdraw a guilty plea only to correct a manifest injustice. Therefore, "[a] defendant who seeks to withdraw a plea of guilty after the imposition of sentence has the burden of establishing the existence of manifest injustice." *State v. Smith*, 49 Ohio St.2d 261,361 N.E.2d 1324(1977), paragraph one of the syllabus. Although no precise definition of "manifest injustice" exists, in general, "'manifest injustice relates to some fundamental flaw in the proceedings which result[s] in a miscarriage of justice or is inconsistent with the demands of due process.'" *State v. Wooden*, 10th Dist. Franklin No. 03AP–368, 2004–Ohio–588, ¶10, *quoting State v. Hall*, 10th Dist. Franklin No. 03AP–433, 2003–Ohio–6939; *see, also, State v. Odoms*, 10th Dist. Franklin No. 04AP–708, 2005–Ohio–4926, *quoting State ex rel. Schneider v. Kreiner*, 83 Ohio St.3d 203, 208, 699 N.E.2d 83(1998) ("[a] manifest injustice has been defined as a 'clear or openly unjust act' "). Under this standard, a post sentence withdrawal motion is allowable only in extraordinary cases. *Smith*, 49 Ohio St.2d at 264, 361 N.E.2d 1324.

{¶15} "A motion made pursuant to Crim.R. 32.1 is addressed to the sound discretion of the trial court, and the good faith, credibility and weight of the movant's assertions in support of the motion are matters to be resolved by that court." Id. at paragraph two of the syllabus. Thus, we review a trial court's denial of a motion to

withdraw a guilty plea under an abuse-of-discretion standard, and we reverse that denial only if it is unreasonable, arbitrary, or unconscionable. *Odoms*, 2005–Ohio–4926.

**{¶16}** A trial court is not automatically required to hold a hearing on a post-sentence motion to withdraw a guilty plea. *State v. Spivakov*, 10th Dist. No. 13AP–32, 2013–Ohio–3343, ¶11, *citing State v. Barrett*, 10th Dist. No. 11AP–375, 2011–Ohio–4986, ¶9. A hearing must only be held if the facts alleged by the defendant, accepted as true, would require that the defendant be allowed to withdraw the plea. Id. *Accord, State v. Wynn*, 131 Ohio App.3d 725, 728, 723 N.E.2d 627, 629 (8th Dist 1998); *State v. Blatnik*, 17 Ohio App.3d 201, 204, 478 N.E.2d 1016, 1020(6th Dist 1984); *State v. Aleshire*, 5th Dist. Licking No. 09-CA-132, 2010-Ohio-2566, ¶71.

**{¶17}** The decision whether to hold a hearing on a post-sentence motion to withdraw a guilty plea and whether to grant or deny the motion is left to the discretion of the trial court. *State v. Smith,* 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977), paragraph two of the syllabus; *Spivakov,* ¶10. Therefore, this court's review of the trial court's denial of a post-sentence motion to withdraw a guilty plea or the decision not to hold a hearing is limited to a determination of whether the trial court abused its discretion. *State v. Conteh,* 10th Dist. No. 09AP–490, 2009–Ohio–6780, ¶16. Absent an abuse of discretion on the part of the trial court, its decisions concerning a post-sentence motion to withdraw guilty plea must be affirmed. *State v. Xie,* 62 Ohio St.3d 521, 527 (1992). Although an abuse of discretion is typically defined as an unreasonable, arbitrary, or unconscionable decision, *State v. Beavers,* 10th Dist. No. 11AP–1064, 2012–Ohio–3654, ¶ 8, we note that no court has the authority within its discretion to commit an error of law. *State v. Beechler,* 2d Dist. No. 09–CA–54, 2010–Ohio–1900, ¶ 70.

{¶18}  In his motion, Harris contended that he had received ineffective assistance of counsel. He claimed counsel failed to discuss the facts of the case, did not interview potential witnesses, disregarded information concerning the identity of the true offender failed to discuss potential defenses and trial tactics and produced no mitigation evidence at sentence. However, during the plea hearing in the case at bar Harris indicated that he had confidence in his attorney, that he understood the proceedings and that the medications he was taking helped him to think clearly. The following exchange occurred between Harris and the trial judge,

The Court:    Do you have complete confidence in Mr. Blackwell as your attorney to represent you skillfully and diligently in this matter?

Appellant:    Yes, sir.

The Court:    Have there been any threats or promises or inducements of any kind made to get you to enter a plea of no contest in this case other than what's been stated here in open court this morning?

The Defendant:     No, sir

The Court:    Do you have evidence to present which — well, let me phrase that a different way. Do you understand that if you persist in a plea of no contest, that that is an admission of the truth of the charge against you? Do you understand the effect of a plea of no contest?

The Defendant:     Yes, sir

The Court:    Do you wish to persist in a plea of no contest to both counts 1 and, Count 1 being aggravated robbery, Count 2 being kidnapping? Do you wish to persist in a plea of no contest to each of those two charges?

The Defendant:     Yes, sir.

The Court:    Do you feel that you understand everything that's gone on thus far?

The Defendant:     Yes, sir.

The Court:    Do you have any questions about your rights or any of the procedures that have taken place?

The Defendant:     No, sir.

The Court:    Knowing and understanding what you do, is it still your desire then to enter a plea of no contest to the charges as contained in Count 1 and Count 3 of the indictment? Do you still wish to plead no contest to both of those charges?

The Defendant:     Yes, sir.

The Court:    Are you making this plea of your own free will?

The Defendant:     Yes, sir.

The Court:    Are you taking any medications at this time?

The Defendant:     Yes, sir.

The Court:    What do you take?

The Defendant:     Seroquel, Zoloft — no, Seroquel, Trazadone, Clonopin and two other pills I don't know the names of. One is for helping me sleep and one is for help me from shaking a lot.

The Court:    The prescription medications that you are currently taking in the amounts and the combinations in which you are taking them, do they

have any effect on your ability to think clearly or to make voluntary decisions on your own?

The Defendant:        No, sir. They help me to think clearly.

The Court:    Are you taking any other drugs of any kind prescription or otherwise?

The Defendant:        No, sir.

T. Change of Plea Hearing, Jan 20, 2009 at 9-11.

{¶19}  Further, at the March 6, 2009 sentencing hearing Harris informed the trial judge,

I wanted to say I don't want you to think that I feel that just because I was off my medication that I feel I had a right to do anything because what is wrongness is wrong regardless of the fact. And I wanted to let you know that before all that has happened, I was court-ordered from another court, the probation officers to give me my medication, to get my medication. He said if I couldn't get it, for me to be placed somewhere until I get it. Once the court order came, I called Six Counties and several other places out here. Six County had a six-month waiting list, and some other private offices had some — they wasn't taking anybody or nothing. I went to the probation department, and I told the probation that I was having problems. He asked me was I going to commit suicide? I told him no, that I wasn't going to hurt myself but I was still, you know, having a lot of problems and I needed my medication. He said well, there ain't nothing we can do at this point but wait.

At the time I had someone in my house that also took medication. And I asked him, "Well, can I take her medication," which was my father's girlfriend. And he said, "No. That is against the law." I said, "Okay." So, I started asking him, "What am I supposed to do?" He said, "Well, try to find a job or something." And I asked him, "How could I do that when I can't be -- I don't know what to do." Even though he told me that, I still went out and applied to all these temp places, even though I felt I wasn't going to be able to get a job with all my health issues and everything. But I did what he said.

Then I got to the point where I started getting real depressed and started drinking and started wanting to use drugs with my friend. Now, I am saying that the part of me wanting to get drugs is because I couldn't get the medication. I'm not saying because of my medication I went and fought her because I know it was wrong, and me fighting her was wrong. And that ain't why I'm saying my medication. I said the reason the whole thing happened is because I wanted to get drugs to withstain [sic.] the medication that I was supposed to be taking. That's the whole reason I got into all of this trouble was -- if it wasn't for me trying to get drugs, get some drugs because I couldn't handle being without medication. I would have never have had no reason to meet with Yvonne or Josh or nobody. I would have been at the house or something. That's the only reason that I say I was doing that. But I'm not saying my medication was the reason I did anything wrong as far as trying to fight her or get my money back or

anything. So I didn't want you to think I was using that in a sense of saying that's the reason I did it. I was just using that as the sense that's the reason I was trying to get the drugs.

T. Dispositional Hearing, March 6, 2009 at 9-11.

{¶20} Upon review, we find that the trial court did not abuse its discretion when it failed to hold a hearing on Harris' motion to withdraw his guilty plea. Harris' self-serving generalized allegations contained within his motion were insufficient in this case to demonstrate a manifest injustice.

{¶21} Harris' first assignment of error is overruled.

## II. & III.

{¶22} In his second assignment of error, Harris contends that the trial court erred by overruling his motion to withdraw his previously entered no contest pleas. In his third assignment of error, Harris contends that his pleas of no contest were not knowing, intelligent, and voluntary because he was incompetent to stand trial. We shall address these arguments together as they involve interrelated issues.

{¶23} We begin by noting that Harris did not raise a claim that he was incompetent to enter pleas in this case in the motion to withdraw his pleas that he filed in the trial court on April 24, 2013.

{¶24} R.C. 2945.37(B) provides that the court, prosecutor, or defense may raise the issue of the defendant's competence to stand trial. If the issue is raised before the trial has commenced, the court shall hold a hearing on the issue within 30 days after the issue is raised, unless the defendant has been referred for evaluation in which case the court shall conduct the hearing within 10 days after the filing of the report of the

evaluation. R.C. 2945.37(C). R.C. 2945.37(E) provides for stipulating to the admissibility of the competency report as evidence so the medical professionals will not need to testify in order to present their findings. These procedures were followed in Harris case. The state and the defenses stipulated to the admissibility of the competency report in the case at bar. Harris did not file a direct appeal concerning the trial court's competency finding as he had a right to do after sentencing in March 2009.

{¶25} Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment. *State v. Szefcyk*, 77 Ohio St.3d 93, 671 N.E.2d 233(1996), syllabus, *approving and following State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104(1967), paragraph nine of the syllabus. It is well settled that, "pursuant to *res judicata,* a defendant cannot raise an issue in a [petition] for post conviction relief if he or she could have raised the issue on direct appeal." *State v. Reynolds*, 79 Ohio St.3d 158, 161, 679 N.E.2d 1131(1997). Accordingly, "[t]o survive preclusion by *res judicata,* a petitioner must produce new evidence that would render the judgment void or voidable and must also show that he could not have appealed the claim based upon information contained in the original record." *State v. Nemchik*, 9th Dist. Lorain No. 98CA007279, 2000 WL 254908(Mar. 8, 2000); *see, also*, *State v. Ferko*, 9th Dist. Summit No. 20608, 2001 WL 1162835(Oct. 3, 2001).

**{¶26}** In the case at bar, Harris had the opportunity to raise the issues of ineffective assistance of trial counsel and his competency to stand trial on direct appeal, but he failed to do so. The doctrine of res judicata bars Harris from raising this issue anew via a motion to withdraw his no contest plea filed four years after sentencing. *See*, *State v. Foy*, 5th Dist. No. 2009–CA–00239, 2010–Ohio–2445, ¶8; *State v. Miller*, 5th Dist. No. 2011–CA–00074, 2011–Ohio–3039.

**{¶27}** Harris' second and third assignments of error are overruled.

**{¶28}** For the foregoing reasons the judgment of the Coshocton County Court of Common Pleas is affirmed.

By Gwin, J.,

Hoffman, P.J., and

Baldwin, J., concur